**FALCON PLASTICS–DIVISION OF B–D LABORATORIES, INC., Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 21882.**

United States Court of Appeals
Ninth Circuit.

June 4, 1968.

Frank Simpson for Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for appellant.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Burton L. Raimi, Attys., N.L.R.B., Washington, D. C., Paul A. Cassady, Regional Director, N.L.R.B., Los Angeles, Cal., for appellee.

Before BARNES and BROWNING, Circuit Judges, and SOLOMON, District Judge.

## PER CURIAM:

The petitioner was charged with numerous unfair labor practices. The Trial Examiner recommended dismissal of the complaint in its entirety. The Board adopted his findings *in toto* and agreed with all of his conclusions except that the discharge of the employee Reese did not violate Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1) (1964). The opinion of the Board and the decision of the Examiner are reported at 164 N.L.R.B. No. 101.

The Examiner found that Reese and two other employees had agreed to make common cause in demanding a wage increase and were thus engaged in protected concerted activity to secure it, and that the employer may well have been aware of, or have suspected, this fact. He found that it was "fairly inferable" that Reese was discharged not because he had used vulgar and obscene language in rejecting an increase less than that he and his fellow employees had agreed upon, but because Reese's supervisor was "disturbed about the rejection of the merit increase" and realized "that the rejection presaged a demand for higher wages." The Examiner found it significant that the employer's rules and regulations permitted lesser penalties for insubordination (the employer's characterization of Reese's conduct) than discharge. The Examiner found, "It may be assumed that [the employer] had concluded that, of [the three employees] who had initially refused the merit increase, Reese had been most vociferous, and, perhaps, even, that his attitude did not bode well for [the employer's] future wage structure."

The Examiner's reasons for not concluding, on these findings, that Reese was discharged for his concerted activity appear to have been two. First, since the two other employees who had refused the increase had not also been fired, the Examiner thought that in order to hold that Reese was discharged for his protected activity in concert with these two "it would be necessary to find that [the employer] was bent on eliminating a stormy petrel and that it seized upon the incident as a pretext for doing so." And, second, the Examiner thought that it "would also deprive [the employer] of its inherent management right to discipline recalcitrant employees. * * * The right of an employee to indulge in the argot of the plant in his day-to-day relations with his fellow-employees, and perhaps even in certain circumstances, with his superiors, must be weighed against the right of the employer to maintain plant discipline and morale, and respect for superiors."

The Board concluded that the Examiner's findings, briefly stated above, "establish *prima facie* that [the employer] discharged Reese because he had engaged in protected concerted activities. Therefore, it was incumbent on [the employer] to rebut that showing. This it has not done."

As to the Examiner's first reason for reaching the contrary result, the Board did not consider the singling out of Reese for discharge to be sufficient to rebut the inference of improper motivation since Reese "was the most outspoken participant in the common cause." This seems to us to be as permissible an evaluation of this portion of the record as the contrary evaluation adopted by the Examiner. Whether the employer's discharge of Reese was motivated by his participation in protected concerted ac-

tivity or by his insubordination, was an inference to be drawn from all of the established facts. We think it fair to say that there was substantial support in the record for either inference. Since the Examiner did not base the conclusion which he reached on this issue upon an evaluation of the credibility of witnesses, the Board's conclusion must prevail. Cheney California Lumber Co. v. NLRB, 319 F.2d 375, 377 (9th Cir. 1963); NLRB v. Texas Independent Oil Co., 232 F.2d 447, 451 (9th Cir. 1956).

■ The Examiner's second reason for holding for the employer raises the issue dealt with in NLRB v. Thor Power Tool Co., 351 F.2d 584, 587 (7th Cir. 1965). As the Court in that case said, "flagrant conduct of an employee, even though occurring in the course of section 7 activity, may justify disciplinary action by the employer. On the other hand, not every impropriety committed during such activity places the employee beyond the protective shield of the act. The employee's right to engage in concerted activity may permit some leeway for impulsive behavior, which must be balanced against the employer's right to maintain order and respect. [Citation] Initially, the responsibility to draw the line between these conflicting rights rests with the Board, and its determination, unless illogical or arbitrary, ought not be disturbed." The Board, not the Examiner, bore the ultimate responsibility for striking this balance; we are not convinced that its determination was either "illogical or arbitrary."

The Board's order will be enforced.

BARNES, Circuit Judge (dissenting):

I respectfully dissent.

In Lozano Enterprises v. NLRB, 357 F.2d 500, 502 (9th Cir. 1966), we said:

"If unlawful discrimination can be inferred from mere union membership or activity, followed by discharge, that inference disappears when a reasonable explanation is presented to show that the employee was not discharged for union membership. NLRB v. United Brass Works (4th Cir. 1961) 287 F.2d 689; NLRB v. Stafford (8th Cir. 1953) 206 F.2d 19; Ohio Associated Telephone Company v. NLRB, 192 F.2d 664 (6th Cir. 1951). Furthermore, an employer's oath that the discharged employee's membership or activity in a union was not the ground for his discharge cannot be disregarded. because of a suspicion that he may have lied. There must be impeachment of him or substantial contradiction, or if circumstances raise doubts, they must be inconsistent with the positive sworn evidence on the exact point."

In Martel Mills Corp. v. NLRB, 114 F.2d 624, 631 (4th Cir. 1940), the Fourth Circuit said:

"We do not lose sight of the fact that our inquiry is centered upon the motivating cause of the employer's action. The task is a difficult one. It involves an inquiry into the state of mind of the employer. Such inquiry is laden with uncertainties and false paths. Obviously our chief guide is the words of the witness under oath who undertook to disclose the workings of his mind. If his explanation is a reasonable one, the onus is upon the Board to establish the falsity of this explanation and the truth of its own interpretation."

Here, the circumstances relied upon by the Board to support its rejection of petitioner's explanation for Reese's dismissal do not suffice for such a purpose. Moreover, the cases relied upon by the Board are clearly distinguishable. In Butcher Boy Refrigerator Door Co., 127 N.L.R.B. 1360 (1960), enforced, 290 F.2d 22 (7th Cir. 1961), there was evidence of antiunion animus on the part of the employer—a circumstance relied upon by the Seventh Circuit, in fact, to distinguish the *Butcher Boy* case from that circuit's earlier decision in Miller Elec. Mfg. Co. v. NLRB, 265 F.2d 225 (7th

Cir. 1959). Here, there is no independent evidence of any hostility to employees' section 7 rights; in a finding upheld by the Board, in fact, the trial examiner concluded (with respect to a union organizing campaign connected with certain other charges brought against petitioner) that there was "a total absence of evidence of anti-union animus, hostility or opposition to the Union, or of the commission of unfair labor practices" by the company. C.T. 40. In Aeronca Mfg. Co. v. NLRB, 385 F.2d 724 (9th Cir. 1967), as well, there was "aciduous and acrimonious" hostility between employer and union. Additionally, the employer in *Aeronca* failed to "conduct an investigation of any sort" to determine if the accusations against the employee in question were accurate, and the employee was "ceremoniously conduct[ed] to the personnel office" and "ostentatiously escort[ed] to the plant gate" when he was discharged—circumstances which we explicitly relied upon in our decision of that case. 385 F.2d at 728. Finally, the dismissal in NLRB v. Thor Power Tool Co., 351 F.2d 584 (7th Cir. 1965), was ordered by the employer's superintendent immediately after a bitter grievance discussion, during the course of which the superintendent had "[o]n several occasions, in progressively louder tones" objected to the participation of the employee in question, and then had "lost control of himself," directing an "obscene epithet" at the employee. 351 F.2d at 586.

In view of the lack of persuasive support for the Board's rejection of the trial examiner's report, I find that on the record considered as a whole the conclusion that Reese's discharge violated section 8 (a) (1) is not supported by substantial evidence. Cf. NLRB v. Park Edge Sheridan Meats, Inc., 341 F.2d 725 (2d Cir. 1965). This court should not be a rubber stamp for either side of N.L.R.B. disputes, nor of the Board itself. Enforcement of the Board's order should be denied.