**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SAFEWAY STORES, INC., Respondent.**

**No. 78–3123.**

United States Court of Appeals, Ninth Circuit.

June 16, 1980.

Kenneth B. Hipp, N.L.R.B., Washington, D. C., argued for petitioner; William R. Stewart, N.L.R.B., Washington, D. C., on brief.

Kathleen M. Kelly, San Francisco, Cal., argued for respondent; Wesley J. Fastiff, San Francisco, Cal., on brief.

Before ANDERSON, SKOPIL and THORNBERRY, Circuit Judges.

SKOPIL, Circuit Judge:

The National Labor Relations Board (the Board) petitions for enforcement of its order requiring Safeway Stores, Inc. (Safeway) to produce for inspection by General Truck Drivers, Warehousemen, Helpers & Automotive Employees, Local No. 315 (the Union) certain documents pertaining to a new employee productivity measurement system. 236 NLRB No. 142. The Union asked for the documents to help it process the grievances of seventeen employees who were returned to their original departments after transferring within Safeway's distri-

bution center. Safeway contended the decisions to return the employees were not grievable. It refused to provide the requested documents, until grievability had been arbitrated. We grant enforcement.

## FACTS

Safeway operates a large retail grocery warehouse and distribution center. The center is composed of several departments, including grocery warehouse, frozen food warehouse, "pre-pakt", and crate yard. In 1977 employees in these four departments were covered by three separate collective bargaining agreements between Safeway and the Union. Grocery warehouse and frozen food warehouse department employees were covered by one contract. Pre-pakt department employees were covered by a second contract, and crate yard employees were covered by a third. Each of the contracts contained a binding arbitration provision and provided for interdepartmental transfers, subject to certain conditions.

The transfer provision in the contract governing grocery warehouse and frozen food warehouse provides:

"In the event that the employee is not able to perform the work satisfactorily within thirty (30) days or by his/her request within thirty (30) days, he/she shall return to his/her former position."

The provision in the pre-pakt employees' contract provides:

"There will be a trial period of up to thirty (30) days to qualify, at the option of the Employer and the employee."

The crate yard employees' contract transfer provision said:

"The thirty (30) day probationary period generally set forth for new employees is waived as it applies herein."

The parties agree that a transferee to the grocery or frozen food warehouse departments became subject to the contract governing employees of those departments. There is a dispute over the interpretation of these transfer provisions, alone or together.

In early May 1977 several employees transferred from other departments in the distribution center to the grocery warehouse department. Later seventeen transferees from the frozen food warehouse, prepakt, and crate yard departments were told they did not meet production standards and would be transferred back to their original departments. The seventeen employees filed grievances with the Union.

On June 15, 1977 the Union and Safeway held a grievance meeting. The Union requested to see all production records for grocery warehouse department swing shift regular employees, new employees, and the transferred employees for the period from January 1 through June 15, 1977.

About April 11, 1977 Safeway had instituted a new employee production measurement system. The old system measured productivity on a pieces-per-hour basis. The new system, method-time-measurement (or MTM), involved recording and evaluating the time each employee required to complete work on an order.

Safeway refused to produce the records. It insisted that the return of transferees to their old departments within thirty days of transfer was within management's discretion and was not grievable under the contracts. The parties agreed to arbitrate the transfer dispute.

The Union persisted in its demand for the records. Safeway continued to refuse to produce them until the grievability issue was arbitrated. On June 17, 1977 the Union filed an unfair labor practice charge with the Board, complaining of Safeway's refusal to produce.

On October 27, 1977 a hearing on the unfair labor practice charge was held before an administrative law judge (ALJ). At the time of the administrative hearing the arbitration hearing had been scheduled, but the issues to be submitted to the arbitrator were still in dispute. Safeway insisted that the threshold issue of grievability was to be arbitrated first. The Union took the position that the entire dispute over the transfers was before the arbitrator. An agreement to first arbitrate only the grievability issue was not reached until a discussion immediately before the arbitration hearing on December 9, 1977.

On January 25, 1978 the ALJ filed his decision. He found in favor of the Union and recommended an order requiring Safeway to produce the requested records and to post an appropriate notice. On June 21, 1978 the Board issued its decision and order. The Board affirmed the ALJ's rulings, findings and recommendations and adopted his recommended order.

On December 1, 1978 the arbitrator issued his award. He found the return of the transferred employees nonarbitrable.

The Board now seeks enforcement of its order. Safeway cross-petitions for review.

## DEFERRAL TO ARBITRATION

Safeway contends that the Board should have deferred to the arbitrator's grievability decision before proceeding to consider the unfair labor practice charge. This contention takes two forms. First, Safeway argues that deference to arbitration in this type of dispute is the preferred course. Under the deference doctrine announced in *Collyer Insulated Wire*, 192 NLRB 837 (1971), the Board should have deferred to arbitration in this case. Second, Safeway asserts that the grievability of the underlying dispute was essential to the relevance of the information requested. The Board should therefore have deferred to the arbitrator's finding of nongrievability. This second argument goes to the merits of the Board's order and not to the Board's procedure.

In *Collyer Insulated Wire* the Board recognized that where declaration of an employer's duties under section 8(a)(5) depends upon interpretation and application of a collective bargaining agreement, it may be appropriate for the Board to defer its own proceedings until the contract dispute has been resolved by the mechanisms established by the parties. Thus, where a grievance and arbitration procedure has been agreed to, the parties should be encouraged to use it to resolve matters of contract interpretation.

■ On review we are limited to whether the Board abused its discretion in reaching its deferral decision. *Hawaiian Hauling Services, Ltd. v. NLRB*, 545 F.2d 674, 676 (9th Cir. 1976), *cert. denied* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977). This court will not deny enforcement unless the Board clearly-departs from its own standards or its standards are themselves invalid. *Id.*

■ As set forth in *Collyer*, two factors must be considered in determining whether the Board departed from its own standards when it refused to defer to arbitration in this case. The first is whether the issue before the Board is one of contract interpretation entrusted by the parties to resolution by arbitration in the first instance. The second factor is the likelihood that resort to arbitration will dispose of the controversy in a manner that does not contravene the purposes of the National Labor Relations Act.

■ The sole issue before the Board was whether or not Safeway had committed an unfair labor practice by refusing to produce the requested documents. This is primarily a statutory issue. The dispute submitted to arbitration did not concern the Union's right to the documents. It concerned whether Safeway had wrongfully returned the transferred employees for failure to meet production standards. We recognize that the grievability of the dispute was a threshold issue presented to the arbitrator. Grievability is *not* a threshold issue in the unfair labor practice inquiry. The issue before the Board was not primarily one of contract interpretation.

The second factor in *Collyer* deference is the likelihood that arbitration will resolve the controversy. We now know that if the Board had postponed its action until the arbitrator made his award, the dispute over document production would have disappeared. We cannot say that the likelihood of this result was obvious when the Board made its decision not to defer. The question whether Safeway was entitled to await arbitration of grievability before it produced any documents was not, and could not be, resolved by arbitration.

In these circumstances we cannot say that the Board abused its discretion by refusing to defer to arbitration. The Board did not depart from its own standards. Those standards are not invalid.

## THE DUTY TO PRODUCE DOCUMENTS

■ A violation of section 8(a)(5) of the NLRA can be predicated on the failure of either an employer or a union to give the other information necessary to enable the requesting party to intelligently evaluate grievances filed. *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); *San Diego Newspaper Guild, Local No. 95 v. NLRB*, 548 F.2d 863 (9th Cir. 1977).

■ Because it is not an unfair labor practice to refuse to furnish information having no relevance to any legitimate union collective bargaining need, the existence of a duty to produce information (*i. e.*, the relevance of the information sought) depends on the factual circumstances of each particular case. *San Diego Newspaper Guild, supra*, at 867.

> "[T]he Board's determination as to whether the requested information is relevant in a particular case is given great weight by the courts either because it is a finding of fact, which is conclusive if supported by substantial evidence, or because it is a finding on a mixed question of law and fact which is within the particular expertise of the Board." *Id.* (fns. and citations omitted).

Safeway contends that the information sought by the Union was not relevant to any legitimate union collective bargaining need because the underlying dispute was not grievable. It insists it was entitled to await the outcome of arbitration on the issue of grievability before it was put to the expense of producing materials going to the merits of the dispute.

Safeway's argument is attractive. Its proposed course of action, it says, is analogous to a stay of discovery in federal district court pending disposition of a motion that may end the entire controversy. Such a stay should be granted in order to save the resources of the court and the parties. If the Board and this court followed Safeway's suggested method of proceeding, both parties would share the burden of finding out if Safeway alone must incur the very great expense of producing the requested documents. As Safeway concedes, however, such a stay is not automatic even in federal court.

Our task now is not to determine whether it would be a better policy to defer to arbitration on the issue of grievability before an employer (or a union) is required to produce documents in connection with a grievance. That policy determination is for the Board. We have stated that the Board did not abuse its discretion. Our task is to determine whether there was substantial evidence on the record to support the Board's finding that Safeway had committed an unfair labor practice. *Universal Camera v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Los Angeles Marine Hardware Co. v. NLRB*, 602 F.2d 1302 (9th Cir. 1979).

This case is governed by *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 87 S.Ct. 565 (1967). In *Acme*, as here, the employer refused to supply requested information to the union. It insisted there had been no breach of the collective bargaining agreement. The Board found a violation of section 8(a)(5) of the National Labor Relations Act because the information requested was "necessary in order to enable the Union to evaluate intelligently the grievances filed." The Seventh Circuit refused enforcement because the contract between Acme and the union contained a binding arbitration clause.

The Supreme Court framed the issue as "whether the Board must await an arbitrator's determination of the relevancy of the requested information before it can enforce the union's statutory rights under § 8(a)(5)." *Id.* at 436, 87 S.Ct. at 568. In reversing the Seventh Circuit judgment, the Court concluded the Board need not wait.

Safeway attempts to distinguish *Acme* on the grounds that it offered to produce the requested information if the threshold issue of grievability was resolved against it. In *Acme* the employer refused to supply any information until the *merits* of the dispute had been resolved in arbitration. While *Acme* was a stronger case for the result reached, its rationale applies to the facts of this case.

 The Board may order production of information relevant to a dispute if there is some probability that it would be of use to the union in carrying out its statutory duties and responsibilities. *Id.*, 385 U.S. at 437, 87 S.Ct. at 568. One of these duties is to evaluate grievances and sift out unmeritorious claims. A union cannot be put to the expense of arbitration only to learn later that its complaint had no merit. *Id.*, 385 U.S. at 438–39, 87 S.Ct. at 569.

We recognize that on the facts before it the Court in *Acme* was referring to arbitration of the merits and not arbitration of grievability. We do not find this difference dispositive. Safeway had no right to withhold from the Union the information the Union needed to evaluate the grievances. It is possible that the Union, with proper information, would have determined that the returned transferees failed to meet the old or new productivity standards. The Union might then have withdrawn its grievances without incurring the expense of arbitrating even grievability.[1] At the time the ALJ held a hearing on the Union's unfair labor practice charge the parties had not agreed to arbitrate the single issue of grievability. The Union was proceeding to arbitration of its grievances and had a right to the information it requested. The Board issued its order before the arbitrator made his award.

Safeway alternatively proposes and assumes that it was required to produce only information relevant to *grievable* disputes. The requirement of grievability is not now a part of federal labor law, and we decline to add it.

## RELEVANCE OF THE REQUESTED INFORMATION

The only question remaining is whether the Board's finding that the information requested was relevant to the Union's duties is supported by substantial evidence on the record.

 Certain types of information, such as wage data pertaining to unit employees, are so central to the employer-employee relationship that they are considered presumptively relevant. When such information is requested, the employer has the burden of showing lack of relevance. *San Diego Newspaper Guild, supra*, 548 F.2d at 867. We have already rejected Safeway's argument that the information was not relevant because the underlying dispute was not, or had not been determined to be, grievable.

 The Union was processing grievances arising out of the unilateral return of seventeen transferred employees to their original departments. Safeway alleged the retransfers were made because the employees did not satisfy the new production requirements. The Union needed the production records to determine whether Safeway's allegations were correct and whether the new productivity standards could fairly be used. The information the Union requested was presumptively relevant to its collective bargaining duties. Safeway did not rebut the presumption.

Enforcement is GRANTED. The cross-petition for review is DENIED.

---

1. The fact that the Union later pursued its attack on the new productivity standards through other grievances is not proof to the contrary. In any event, it was not a justification for Safeway's refusal at the time the information was first requested.