**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MAX FACTOR AND COMPANY, Respondent,**

v.

**Luisa GRATZ, Intervenor.**

**No. 79–7118.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1980.

Decided Sept. 9, 1980.

Rehearing Denied Oct. 24, 1980.

Certiorari Denied May 18, 1981. See 101 S.Ct. 2314.

Sandra K. Williams, Washington, D. C., argued, Elliott Moore, Washington, D. C., on brief, for petitioner.

Elizabeth B. Spector, for intervenor and appellant.

Stuart R. Korshak, Los Angeles, Cal., argued and on brief, for respondent.

Before GOODWIN and PREGERSON, Circuit Judges, and SCHWARZER,* District Judge.

WILLIAM W SCHWARZER, District Judge:

The National Labor Relations Board and Intervenor Luisa Gratz petition under 29 U.S.C. Section 160(e) for enforcement of the Board's order against Max Factor and Co. ("Factor"). The controversy arose out of Factor's discharge of Gratz, who then filed unfair labor practice charges under Sections 8(a)(1) and (3) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(1) and (3). Shortly thereafter the union grieved the discharge under the collective bargaining agreement and took it to arbi-

* The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

tration. After a hearing on the unfair labor practice charges, an administrative law judge ("ALJ") found that Factor had violated the Act and ordered reinstatement. While the ALJ's decision was pending before the Board on exceptions, the arbitrator, after hearing, issued his decision sustaining the discharge as having been for good cause. Factor's subsequent request to the Board to defer to the arbitrator's decision was rejected by the Board which adopted the ALJ's decision.[1] We grant enforcement.

### I. *Facts*

Gratz was chief union steward at Factor's Los Angeles plant until February 3, 1977. In course of efforts to process a large backlog of grievances, an unsatisfactory relationship developed between Gratz and Factor's director of industrial relations, Bill Piercy, and personnel manager, James Bryant. Gratz was given disciplinary warnings on December 9 and 27, 1976, suspended on December 27, and discharged February 3, 1977. The ALJ found that during October or November, 1976, Bryant and Piercy called Gratz into Bryant's office to tell her they felt she was spending too much time on union business and not enough time on production work. He accepted Gratz's testimony that during the conversation they suggested that she consider taking a management position with Factor or returning to law school at Factor's expense and giving up her job as chief steward. He concluded that this was an offer of economic benefits for giving up a union office, a violation of Section 8(a)(1). The ALJ also found that Factor's disciplinary warnings to Gratz on December 9 and 27, 1976, ostensibly for spending too little time on production work, were motivated by Gratz's devotion and energy on behalf of the union as chief steward. When Bryant gave her the December 27 warning, Gratz responded angrily, accusing him of "kissing the ass" of a Factor vice president and calling Bryant "a big phoney" and "a little twerp." Factor then suspended her for the stated reason that she had violated plant rules by using profane and abusive language. The ALJ found that Gratz's conduct occurred in the course of her duties as chief steward and in response to an unlawful disciplinary warning, and was not so flagrant, violent, or serious as to forfeit the protection of Sections 8(a)(3) and (1) of the Act. He concluded that Gratz's subsequent discharge on February 3, 1977, following another incident with Bryant was motivated by her pursuit of protected activities as chief steward, and rejected as pretextual the reasons offered by Factor: insufficient production work, use of abusive language, and insubordination.

The ALJ made specific findings of fact to support his conclusion that Factor's actions were motivated by a purpose forbidden by Sections 8(a)(1) and (3). The most significant findings were that Factor's management was concerned about the large backlog of pending employee grievances and disapproved of Gratz's manner of handling the grievances as chief steward. He found that Piercy felt Gratz had failed to compromise pending grievances or to discourage the filing of unfounded and duplicative grievances, and that Bryant had repeatedly complained that Gratz was too "pushy" and "aggressive" and had a "bad attitude" and that he twice said he would "get" her for actions she took as chief steward. The ALJ supported his finding that Factor's reliance on Gratz's low production work hours was pretextual by findings that other chief stewards had not been subject to the same demands. Inasmuch as the deferral issue was not raised before the ALJ, he made no findings on it.

On January 3, 1978, 23 days after the ALJ's decision, the arbitrator issued his opinion and award. There is no indication that evidence regarding the October or November, 1976 meeting was presented to him, but he discussed the events of December, 1976, through February, 1977, at length. He found that the suspension and discharge were for just cause and accepted Factor's stated reasons as valid. He found that Gratz spent much less than 50 percent

---

1. The Board's Decision and Order are reported at 239 NLRB No. 99, 100 LRRM 1023 (1978).

of her time on production work. Based on the testimony of other chief stewards that they spent more than 50 percent of their time on production work, the arbitrator rejected the union's defense that the production work requirement was not "fair." The arbitrator's opinion does not discuss this "defense" in terms of statutory rights, but notes only that unfair labor practice charges were filed with the Board. No statutory provisions, court cases, or Board decisions are cited. The arbitrator also sustained Factor's other stated reasons for suspending and discharging Gratz. He found that the various instances of conflict between Gratz and Bryant were caused by her unwarranted attitude that as chief steward she was "equal to or above the management people she had to deal with." (R 94–95, 97–98, 100, 103). Regarding Gratz's abusive language toward Bryant, the arbitrator found that such conduct was not "incidental to the carrying out of the official duties of a Union representative" and created just cause for disciplinary action. (R 97, 104).

## II. *Deferral to Arbitration*

■ This case again confronts the court with the troublesome issue of whether, and under what circumstances, the Board's refusal to defer to an arbitrator's decision should be upheld. Resolution of that issue requires accommodation of two important policies which are in tension: the policy favoring the exercise of jurisdiction by the Board to prevent unfair labor practices[2] and the policy favoring the "settling of labor disputes by arbitration." *United Steelworkers of America v. Enterprise, Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960);

*Gateway Goal Co. v. United Mine Workers of America*, 414 U.S. 368, 377–79, 94 S.Ct. 629, 636–637, 38 L.Ed.2d 583 (1974).[3]

■ The task of making that accommodation in any particular case is, in the first instance, the Board's, and to that end it has wide discretion to decide whether to defer. *Hawaiian Hauling Service, Ltd. v. NLRB*, 545 F.2d 674, 676 (9th Cir. 1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977). In that case we said that:

> The Board has established criteria to guide its decision and to this extent self-imposed restraints limit its discretion. In reviewing the Board, we must insure that it adheres to its own standards until they are properly changed by the Board. We will not deny enforcement unless the Board clearly departs from its own standards or its standards are themselves invalid. (*Id.*)

*See also Stephenson v. NLRB*, 550 F.2d 535, 537 (9th Cir. 1977); *Alfred M. Lewis, Inc. v. NLRB*, 587 F.2d 403, 407 (9th Cir. 1978); *NLRB v. Pincus Brothers, Inc.-Maxwell*, 620 F.2d 367 (3rd Cir. 1980); *Local 700, Int. Assn. Mach. & Aero Workers v. NLRB*, 525 F.2d 237, 239 (2nd Cir. 1975); *cf. Carey v. Westinghouse Corp.*, 375 U.S. 261, 270–71, 84 S.Ct. 401, 408, 11 L.Ed.2d 320 (1964); *William E. Arnold Co. v. Carpenters District Council*, 417 U.S. 12, 16–17, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974).

The fountainhead of the deferral policy is *Spielberg Manufacturing Co.*, 112 NLRB 1080 (1955), in which the Board announced that it would defer to an existing arbitration award (upholding employee discharges) and dismiss an unfair labor practice charge where (1) the arbitration proceeding appeared to have been fair and regular, (2) all parties agreed to be bound, and (3) the

**2.** 29 U.S.C. Section 160(a) provides, in part:

The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: . . . .

**3.** Labor Management Relations Act, Section 203(d), 29 U.S.C. Section 173(d), provides, in part:

Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . .

arbitrator's decision was not "clearly repugnant to the purposes and policies of the Act." *See also, International Harvester Co.*, 138 NLRB 923 *enforced sub nom., Ramsey v. NLRB*, 327 F.2d 784 (7th Cir.), *cert. denied*, 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (also a discharge case).

Subsequently the Board extended that policy to cases involving disputes subject to arbitration under a collective bargaining agreement but not yet submitted to arbitration. *Collyer Insulated Wire*, 192 NLRB 837 (1971). *See, e. g., NLRB v. Safeway Stores*, 622 F.2d 425 (9th Cir., 1980). Although a majority of the Board has rejected the *Collyer* policy of deferral to prospective arbitration, at least as applied to individual rights cases under Sections 8(a)(1) and (3), *see General American Transportation Company*, 228 NLRB 808 (1977), the *Spielberg* policy appears to remain in effect.[4]

The Board here gave three reasons for its decision not to defer to the arbitrator's award:

(1) "that deferral to the arbitration award herein would engender a result repugnant to the purposes and policies of the Act";

---

**4.** In *General American*, two members rejected *Collyer* type deferral to arbitration altogether on the ground that it was contrary to the language and policy of the Act. Two members continued to support *Collyer*. The chairman, while continuing to adhere to *Spielberg*, concurred with the decision not to defer on the ground that *Collyer* type deferral is inappropriate in individual rights cases arising primarily under Sections 8(a)(1) and (3). Thus deferral to prospective arbitration, as opposed to an existing award, was rejected by the majority. *See, also, Kansas City Star Company*, 236 NLRB 866 (1978). *But compare Filmation Associates, Inc.*, 227 NLRB 1721 (1977), in which a majority held that *Spielberg* would not be applied to a case under Section 8(a)(4) (discharge because the employee testified before the Board).

**5.** As we read the Board's decision, its conclusion that deferral would be repugnant does not turn on the sequence of the proceedings before the ALJ and the arbitrator. We have difficulty with the Board's reasoning in support of this third ground. The applicability of the *Spielberg* policy does not turn on whether the arbitrator's hearing and award proceeded the ALJ's hearing and decision. The Board's only authority on this point is footnote 2 of its decision in

---

(2) that, because "[t]he arbitrator did not pass on the unfair labor practice aspects of the Charging Party's suspension and discharge herein, nor did he specifically consider the additional unfair labor practice allegations which the Administrative Law Judge found went to the heart of the Act and were closely interwoven with Respondent's warning, suspending, and discharging the Charging Party . . . deferral to the arbitration award would not effectuate our protection of Section 7 rights . . ."; and

(3) that deferral would be unwarranted regardless of the merits under *Spielberg* because the arbitration hearing took place after the hearing before the ALJ and the arbitrator's decision issued after the ALJ's.[5] 239 NLRB at ——, 100 LRRM at 1023.

The first of the Board's three reasons is based on one of the original *Spielberg* criteria. Having found that the arbitral proceedings were fair and regular and that the parties had agreed to be bound, the Board's decision states that deferral would engender a result repugnant to the Act. Although the Board's decision contains no

---

*Timpte, Inc.*, 233 NLRB 1218 (1977). *Timpte* is distinguishable for two reasons: first, the employer in that case had at no time made a request for deferral under *Spielberg*, and secondly, deferral would have been to prospective arbitration under *Collyer* which the Board's majority had rejected in *General American Transportation Corp., supra*. The statement in the *Timpte* footnote relied on here, that deferral is unwarranted when the arbitration hearing took place after the ALJ hearing and the arbitrator's decision issued after the ALJ's, is therefore nothing more than dictum. In this case the grievance proceedings were roughly concurrent with those before the ALJ. We are unable to see what difference, it would have made to the decision whether to defer under *Spielberg* if the arbitrator's hearing and award had come first. If the sequence of proceedings were determinative, "those who would prefer a Board decision would need only to stall the arbitration process. Such a result would undermine the federal policy in favor of arbitration." *Lodge 1327, International Association of Machinists and Aerospace Workers v. Fraser & Johnston Co.*, 454 F.2d 88, 91 (9th Cir. 1971), *cert. denied*, 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 119 (1972).

supporting analysis of the repugnance criterion,[6] it affirms the ALJ's findings and conclusions and adopts his recommended order. On the basis of those findings and conclusions, the Board could reasonably conclude that Factor's activities constituted a sufficiently flagrant interference with protected activities that the duty to prevent unfair labor practices outweighed the policy of encouraging arbitration by deferring. We therefore find no abuse of discretion in the Board's conclusion that deferral would engender a result repugnant to the Act.

Our reasoning in *Douglas Aircraft Co. v. NLRB*, 609 F.2d 352 (9th Cir. 1979), is not inconsistent with this conclusion. In *Douglas Aircraft*, this court set aside a Board decision refusing to defer where an arbitral award was based on two grounds, one permissible and one impermissible under the Act. We held that the Board should not have disregarded a clarification which established that the arbitrator had intended the two grounds to be independent, not cumulative. As an independent ground for our decision, we held that "the Board should have deferred because a plausible interpretation of the ambiguous award was consistent with the Act, and thus the award was not 'clearly repugnant' to the Act." 609 F.2d at 355.

The Board's decision in the instant case does not involve the "[o]verzealous dissection of [arbitral] opinions by the NLRB" that concerned this court in *Douglas Aircraft. Id.* The Board's reliance on *Spielberg's* repugnance criterion in this case does not rest on any ambiguity in the arbitrator's rationale, but rather on the repugnance of the result he reached. There is no danger that the Board's decision not to defer will "deter the writing of full opinions." *Id. Douglas Aircraft* does not, therefore, bar deferral in this case on the ground of the arbitral award's repugnance to the Act.

Where the Board determines that arbitrator's result differs from one which is

---

**6.** We read the Board's decision as reaching the conclusion that deferral would be repugnant to the Act on grounds which are independently sufficient and separate from the additional stated reason that the arbitrator "did not pass on the unfair labor practice aspects of the . . . suspension and discharge . . . ." In *Stephenson v. NLRB*, 550 F.2d 535 (9th Cir. 1977), this court, over the strong dissent of Judge Kunzig, followed *Banyard v. NLRB*, 505 F.2d 342 (D.C. Cir. 1974), in holding that deferral was improper even though the *Spielberg* criteria were met, because the arbitrator had not specifically considered and decided the unfair labor practice issue. The *Banyard* criteria have been criticized, *see* R. Garmon, Labor Law 742 (1976); Recent Cases, *Banyard v. NLRB*, 88 Harv.L.Rev. 804 (1975). There is reason to question whether the *Stephenson* majority's endorsement of the *Banyard* requirement was necessary to its holding. In *Stephenson*, the court refused to enforce a Board decision deferring to arbitration on the basis of what was then the Board's policy announced in *Electronic Reproduction Corp.*, 213 NLRB 758 (1974). The *Electronic Reproduction* policy was to defer in all discharge or discipline case unless unusual circumstances were shown which caused a failure to introduce before the arbitrator evidence relevant to the unfair labor practice charge. Rejection of the *Electronic Reproduction* presumption in favor of deferral did not require the *Stephenson* court to adopt the *Banyard* criteria. Moreover, the arbitrator's function is to decide contractual issues; wheth-

er this function properly includes consideration of statutory unfair labor practice issues is a matter of deep controversy in the profession. *Compare, e. g.,* B. Meltzer, *Ruminations About Idealogy, Law,* and *Labor Arbitration, in The Arbitrator, the NLRB, and the Courts,* Proceedings of the 20th Annual Meeting, National Academy of Arbitrators 1, 14–19 (1967), *with* R. Howlett, *The Arbitrator, the NLRB, and the Courts, Id.* at 67, 77–88, *and* M. Sovern, *When Should Arbitrators Follow Federal Law?*, Arbitration and the Expanding Role of Neutrals, Proceedings of the 23rd Annual Meeting, National Academy of Arbitrators 29 (1970). We see no useful purpose served, in cases where the arbitral award is not clearly repugnant to the Act, by precluding deferral because of uncertainty about whether the arbitrator intended to decide the statutory unfair labor practice issues. *Cf.* J. Kurtz, *Arbitration and Federal Rights Under Collective Agreements in 1976,* Arbitration—1977, Proceedings of the 30th Annual Meeting National Academy of Arbitrators 305 (1977) ("An analysis of the court and NLRB decisions dealing with *Spielberg* during the past year makes it difficult to see how the two additional prerequisites requested by the *Stephenson* majority would add anything of substance to the existing three prerequisites, especially the requirements that the proceedings be fair and regular and that the resulting arbitration award not be repugnant to the policies and purposes of the NLRA.") *But see, Suburban Motor Freight Inc.*, 247 NLRB No. 2, 103 LRRM 1113, 1114 (1980).

appropriate under the Act, it may decline to defer on the ground that the arbitral award is clearly repugnant to the Act if it finds that the interest in affording the Act's protection is so compelling under the circumstances that it outweighs the interest in encouraging private resolution of disputes through arbitration.[7] The Board has wide discretion to apply its *Spielberg* criteria. *See, e. g., Alfred M. Lewis, Inc. v. NLRB, supra; Hawaiian Hauling Service, Ltd. v. NLRB, supra.* A fuller statement by the Board of its reasons for this conclusion would, as Judge Pregerson states, have been helpful. *Cf. District 1199E, National Union of Hospital and Health Care Employees v. NLRB*, 613 F.2d 1102, 1108–09 (D.C. Cir. 1979). We cannot say, however, that its refusal to defer on the ground of repugnance to the Act was, on the record before the ALJ, an abuse of discretion.

### III. *Substantiality of Evidence Supporting the Board's Finding.*

Board findings on unfair labor practice charges will be affirmed if supported by substantial evidence. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951). Substantial evidence is that which a reasonable person could accept as a basis for reaching the same conclusion. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). Board findings on issues of credibility will not be disturbed unless a clear preponderance of all the evi-

dence convinces the court of appeals that the findings are incorrect. *NLRB v. International Longshoremen's Union & Local 27*, 514 F.2d 481, 483 (9th Cir. 1975).

### A. *The Offer of Economic Benefits*

Factor does not dispute that an employer violates Section 8(a)(1) by offering economic benefits in exchange for ceasing union activity. *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 686, 64 S.Ct. 830, 834, 88 L.Ed. 1007 (1944). It attacks the factual finding, affirmed by the Board, that Piercy and Bryant offered Gratz benefits if she would give up her job as chief steward. Conceding that this finding rests on the ALJ's acceptance of Gratz's testimony instead of the testimony of Piercy and Bryant, Factor argues that this acceptance was unreasonable and in conflict with the ALJ's conclusion, in two other instances of conflict between testimony of Gratz and Bryant, to accept Bryant's version. The ALJ's findings as to credibility are not self-contradictory, unreasonable, or contrary to the preponderance of the evidence. The Board's order finding of a violation of Section 8(a)(1) by unlawfully offering benefits must be enforced.

### B. *The Discipline and Discharge.*

Substantial evidence in the record of proceedings before the ALJ supports the Board's finding that Factor disciplined and discharged Gratz because of her diligence and tenacity as a union advocate. This may

---

**7.** The Third Circuit has recently relied on our opinion in *Douglas Aircraft, supra*, to support a contrary interpretation of the *Spielberg* criterion. In *NLRB v. Pincus Brothers, Inc.-Maxwell*, 620 F.2d 367 (3d Cir. 1980), the court held that if an employee was discharged for conduct that is "arguably unprotected" under the Act, then the Board may not rely on the "clearly repugnant" criterion of *Spielberg* as a reason for refusing to defer to an arbitral finding that there was just cause for the discharge. *Id.* at 375. We decline to follow *Pincus Brothers* for several reasons. First, we question the authority for interpreting the Board's self-imposed *Spielberg* criterion differently than the Board has done or given litigants reason to expect. Second, the "arguably unprotected" standard would impose a difficult burden on the Board: before it could exercise its statutory jurisdic-

tion, it would have to rule out every arguable rationale for finding the employee's conduct unprotected. Because this standard is inherently imprecise, it would add a significant element of uncertainty to the Board's determination of the scope of its discretion not to defer. Third, and most important, we see nothing in the statute or the Board's own decisions that excludes reliance, in deciding whether to defer, on factors besides the obviousness of the protected status of the employee's conduct. Enforcing the Act's protection may be important enough to outweigh the interest in encouraging arbitration, even in cases where the conduct involved was "arguably unprotected." The instant case, involving protection of a union official's freedom to prosecute grievances vigorously without retribution, is a case in which the Board could reasonably reach that conclusion.

be viewed as a "mixed motive" case, in which discipline was motivated by permissible as well as impermissible purposes. If so, the required finding that the forbidden motive "constituted the dominant and moving cause" of Gratz's discharge was expressly made and supported by substantial evidence. *Western Exterminator Co. v. NLRB*, 565 F.2d 1114, 1118 (9th Cir. 1977); *Stephenson v. NLRB*, 614 F.2d 1210, 1213 (9th Cir. 1978).

■ Another, perhaps more accurate way of looking at this case is as one in which the employee committed arguable improprieties in the course of protected activities. Gratz's use of offensive and abusive language is typical of this line of cases. *See e. g., Hawaiian Hauling Service Ltd. v. NLRB, supra*, 545 F.2d at 676 n.8; *Dreis & Krump Mfg. Co. v. NLRB*, 544 F.2d 320, 328–29 (7th Cir. 1976); *Falcon Plastics—Division of B-D Laboratories, Inc. v. NLRB*, 397 F.2d 965 (9th Cir. 1968); *Boaz Spinning Co. v. NLRB*, 395 F.2d 512 (5th Cir. 1968). Her arguably excessive hours spent on union affairs, neglecting production work, can be analyzed in the same terms. The standard is whether her improper conduct was so indefensible as to forfeit the Act's protection. *See NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 17, 82 S.Ct. 1099, 1104, 8 L.Ed.2d 298 (1962). Substantial evidence supports the conclusion that Gratz's conduct was not so flagrantly improper as to deprive her union activities of protection under Section 8(a)(1) and (3).

■ Finding no sufficient reason to set aside the Board's conclusions on the merits, we reach the question whether the Board's order of reinstatement was within its discretion. Factor argues that reinstatement is an inappropriate remedy and that the court may deny reinstatement, while enforcing the remainder of the Board's order. While we have the power to modify an order of the Board in an appropriate case, *see NLRB v. Western Clinical Laboratory, Inc.*, 571 F.2d 457 (9th Cir. 1978); *NLRB v. Apico Inns of California, Inc.*, 512 F.2d 1171 (9th Cir. 1975), the evidence of disharmony between Gratz and Factor's management does not justify overriding the Board's broad discretion to order reinstatement. *See Fibreboard Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964).

Accordingly, we grant enforcement of the Board's Decision and Order.

PREGERSON, Circuit Judge (dissenting):

The Board's conclusion that deferral to the arbitration award would engender a result repugnant to the purposes and policies of the National Labor Relations act is, as the majority opinion points out, unsupported by "analysis of the [Spielberg] repugnance criterion." I suggest that we need to know why the Board thought the arbitration award was repugnant to the Act before we determine whether the Board abused its discretion in refusing to defer to the arbitration award. Accordingly, I vote to remand with instructions that the Board state the reasons for its conclusions of repugnancy.