**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**VOUGHT CORPORATION—MLRS SYSTEMS DIVISION, Respondent.**

**No. 85–1271.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1985.

Decided April 21, 1986.

---

John B. Shepard, Dallas, Tex., for respondent.

Jesse Gill, of the N.L.R.B., Washington, D.C., for petitioner.

Before HEANEY, FAGG and BOWMAN, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order which found that Vought Corporation—MLRS Systems Division (the Company) committed several violations of sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 *et seq.* The Company contests the Board's findings that the Company violated sections 8(a)(1) and/or 8(a)(3) by attempting to enforce an overly broad no-distribution rule, and by reprimanding and firing employee David Evans, chairman of the in-plant union organizing committee. We enforce the Board's order.

## I. FACTS.

The Company manufactures missile launchers at a nonunion facility in Camden, Arkansas. In June, 1982, it hired David Evans as a general assembler, labor grade two. Evans performed his job very well and, in November, 1982, was promoted to a dispatcher in the production control unit at a labor grade sixteen. His duties included

inventorying, requisitioning, and replenishing depleted storage bins that contained parts for use on the launcher line. His performance as a dispatcher was exemplary through February, 1983. In early March, 1983, Evans unsuccessfully bid on a supervisory position. Shortly thereafter, he contacted the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the Union) to discuss organizing the plant. He later became chairman of the in-plant organizing committee, handed out literature and authorization cards, and began wearing the union insignia.

The Company resisted the union campaign and, ultimately, dismissed David Evans. On June 3, 1983, a Regional Director of the Board issued a complaint which alleged that the Company engaged in conduct, including the discharge of Evans, which violated sections 8(a)(1) and (3) of the Act. An administrative law judge (ALJ) found that the Company violated section 8(a)(1) of the Act by requesting an employee to inform on union activities of others, by maintaining and attempting to enforce an overly broad no-distribution rule, by coercively interrogating employees about union activities, by threatening to close the plant or reduce its work force if the plant was unionized, by promising to resolve grievances if employees would abandon support of the union, by altering an employee's work assignments on account of his union support, and by threatening to discharge employee Evans for engaging in union solicitation. He found, however, that the Company had not violated the Act by issuing Evans an oral and a written warning of work deficiencies and then discharging him. He reasoned that the warnings were justified because Evans's work performance had lagged, and the firing was justified because Evans had threat-

ened his supervisor and had used abusive language.

The Board affirmed the ALJ's findings of section 8(a)(1) violations, but reversed with respect to the ALJ's findings of no violations arising out of the warnings to and firing of Evans. The Board applied the test set forth in *Wright Line*, 251 NLRB 1083 (1981), *enf'd*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), *approved in NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983). It held that the warnings and the firing were motivated by the Company's desire to quell Evans's union activities and that he would not have been warned or discharged had it not been for his union activities. The Board further reasoned that even if Evans had been insubordinate to his supervisor, the insubordination was provoked by the Company's unlawful conduct and the Company thus could not rely on the insubordination to discipline him. *Max Factor & Co.*, 239 NLRB 804, 817 (1978), *enf'd*, 640 F.2d 197 (9th Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 840 (1981); *NLRB v. M & B Headwear Co.*, 349 F.2d 170, 174 (4th Cir.1965).

## II. DISCUSSION.

The Company contends that the Board erred in finding violations of the Act based on (1) the March 15 warning to David Evans to stop soliciting for the Union; (2) the alleged attempt of the Company to enforce an invalid no-distribution rule; (3) the May 5 oral warning to Evans; (4) the May 20 written warning to Evans; and (5) the discharge of Evans.[1] We discuss each contention in turn.

### A. March 15 Threat.

■ On March 15, the Company's general manager called Evans's supervisors to

---

1. Because the Company did not file objections before the Board with respect to the other section 8(a)(1) violations found by the ALJ, *see* 29 U.S.C. § 160(e), and/or does not challenge these findings, as affirmed by the Board, in its brief before this Court, *see Kizzier Chevrolet v. General Motors Corp.*, 705 F.2d 322, 325 n. 2 (8th

Cir.1983), *cert. denied*, 464 U.S. 847, 104 S.Ct. 153, 78 L.Ed.2d 141 (1984), we grant summary enforcement of all these findings. *See Vought Corp.-MLRS Systems Division and International Union, UAW*, 273 NLRB No. 161 (1984) at 18–20, findings 1(a)–(f) & (i) and 2(d) & (e).

his office and informed them that Evans had been passing out union information and harassing employees during working hours. He instructed them to warn Evans that this was impermissible. The supervisors then met with Evans and informed him that he would be discharged if he continued to engage in union activities during working hours.

The ALJ concluded that these Company actions violated the Act because (1) he discredited the testimony that Evans was spending an inordinate amount of time on soliciting for the Union, was harassing other employees and was falling behind in his work; (2) the Company allowed solicitation during work-time for betting pools, charitable gifts and, most significantly, for the anti-union "I'm for Vought" Committee; and (3) the Company did not have a company-wide rule against solicitation. The Board affirmed.

The Company contends that the ALJ and the Board erred in finding a violation of the Act because the permitted solicitations did not interfere with production, whereas Evans's solicitation did because he harassed and intimidated employees. The Board responds that this Court should defer to the ALJ's credibility findings that Evans's union solicitation did not have an adverse impact on employee production. In addition, it notes that the Company allowed its anti-union committee to solicit on Company time. We agree with the Board, and grant enforcement of its finding that the March 15 warning violated section 8(a)(1) of the Act.

### B. The No-Distribution Rule.

■ The Board found that the Company's no distribution rule, which prohibited "reproducing, posting, or passing out typed or printed material other than Company business" without permission of the Company, was unlawfully broad. On appeal, the Company argues that it did not violate the Act because the rule was never enforced. The Board responds that this argument is without merit because an overly broad no-distribution rule violates the Act

even if never enforced because of its chilling effect. *Jas. Matthews and Company v. NLRB*, 354 F.2d 432, 441 (8th Cir.1965), *cert. denied*, 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015 (1966). The Board also asserts that the record supports its finding that the Company did seek to enforce the rule on March 17, 1983, by attempting to prevent Evans from distributing union literature before working hours on the plant's parking lot. Plant security officers had informed Evans that he would not be allowed to do so and one of the officers threatened Evans. The Company responds that the rule was not enforced because plant supervisors informed the security officers that Evans was within his rights and Evans then continued to leaflet and was never disciplined for the incident.

In *DeQueen General Hospital v. NLRB*, 744 F.2d 612, 614 (8th Cir.1984), we reiterated that, "[i]n evaluating employer conduct * * * the test is not whether an attempt at [interference] has succeeded or failed, but whether 'the employer engaged in conduct which reasonably tends to interfere with, restrain, or coerce employees in the free exercise of their rights under section 7.'" (Citations omitted.) Applying this test, we grant enforcement of the Board's finding that the March 15 incident violated section 8(a)(1) of the Act because there is substantial evidence in the record to support the Board's findings that the Company's actions on March 15 tended to interfere with Evans's right to distribute union literature in a nonworking area on nonworking time, and that there were no special circumstances to justify the Company's attempted enforcement of the rule. *See Eastex, Inc. v. NLRB*, 437 U.S. 556, 570–71, 98 S.Ct. 2505, 2514–15, 57 L.Ed.2d 428 (1978).

### C. May 5 Oral Warning.

■ On May 5, Evans's supervisor issued an oral warning to Evans that his work performance was "slipping." The supervisor noted that he had received complaints of supply shortages on Evans's work line. Evans acknowledged a short-

age of supplies, but asserted five reasons for the shortage: 1) he had assumed the responsibilities of another employee, 2) the Company had implemented a time-consuming system of requiring supervisory signatures on requisitions for items, 3) his supervisor often delayed for days before signing his requisitions, 4) the warehouse delayed in getting parts to him, 5) and he was denied overtime work despite the fact that the line he was supplying was working overtime. The ALJ found that the Company had not violated the Act by giving this oral warning. He credited testimony that Evans was performing his function with less enthusiasm than he had shown before he became involved in Union activities.

The Board reversed this finding, relying on the *Wright Line* test. It found that the General Counsel had made a prima facie showing that Evans was disciplined for engaging in protected conduct. The Board next found that the Company had not met its burden of demonstrating that it would have disciplined Evans absent his union activity. The Board rejected the ALJ's conclusion that Evans was responsible for the supply shortage, and placed great weight on the reasons Evans gave for the shortage.

The Company contends that the Board's findings are against the weight of the evidence. The Board, in response, points out that we must enforce its findings if there is substantial evidence on the record as a whole to support its findings, and that we may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera Corp. v. Labor Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). The Board also notes that in applying the employer-motivation prong of the *Wright Line* test, "intent is subjective and in many cases the discrimination can be proven only by the use of circumstantial evidence[;] in analyzing the evidence, circumstantial or direct, the Board is free to draw any reasonable inference." *NLRB v. Melrose Pro-*

*cessing Co.*, 351 F.2d 693, 698 (8th Cir. 1965).

Applying these standards, we have no difficulty in affirming the Board's finding that the May 5 warning was motivated by anti-union animus. The more difficult question is whether, under *Wright Line*, the May 5 warning would have issued absent Evans's union activity. The Board points to the following evidence in support of its finding that it would not have: The Company instituted new time-consuming procedures (which it abandoned shortly after Evans was fired), assigned additional duties to Evans, and refused to allow him overtime, although it had done so before the union campaign, to cause him to fall behind in his work so the Company would have a reason to fire him and thus reduce the chance that the plant would be unionized. We believe that these findings are supported by substantial evidence on the record as a whole and are sufficient to justify the Board's finding of a violation of section 8(a)(1) of the Act.

### D. Written Warning of May 20.

■ On May 18, Evans mentioned to several black employees that he had heard a rumor that a white employee was being groomed for a supervisory position over a recently promoted black employee. Evans suggested that the black employees meet with management concerning this situation. As a result of Evans's passing this rumor, on May 20, the Company issued him a written warning.

The ALJ found that the Company had not violated the Act because a review of the evidence indicated that Evans disrupted the work of at least four production employees who brought the matter to the attention of their supervisors. By a two-to-one decision, the Board disagreed, finding that Evans's remarks were protected concerted activity because the remarks related to group action concerning possible racial discrimination in the work place. *See Frank Briscoe, Inc. v. NLRB*, 637 F.2d 946, 949 (3d Cir.1981); *Keokuk Gas Service Co. v. NLRB*, 580 F.2d 328, 333 (8th Cir.

1978). The Board also disagreed with the ALJ that Evans's remarks disrupted production. The Board noted that only two of the employees complained to management and that Evans's comments would not reasonably tend to incite employees or impede production.

On appeal, the Company asserts that Evans is a racist who only became active in the Union after losing a promotion to a black employee. The Board contests this characterization and argues that Evans was merely trying to advocate that unionization might help black employees settle racial difficulties at the plant. It further responds that Evans's motivation is irrelevant because he was engaging in a protected activity. *NLRB v. Parr Lance Ambulance Service*, 723 F.2d 575, 578 (7th Cir. 1983). In addition, it asserts that little weight should be given the testimony, relied on by the ALJ, of a black employee who stated that another black employee got so upset over Evans's remarks that he refused overtime work.

Our review of the record reveals substantial evidence to support the Board's view that Evans's comments were not the sort of egregious racial rhetoric that is likely to interfere with the employees' free choice in Board-conducted representation elections, in violation of the Board rule set forth in *Sewell Manufacturing Co.*, 138 NLRB 66, 71 (1962), but instead were permissible comments relevant to existing racial conditions in the plant. *See NLRB v. Eurodrive, Inc.*, 724 F.2d 556, 559 (6th Cir.1984); *NLRB v. Utell Intern., Inc.*, 750 F.2d 177, 179 (2d Cir.1984). Accordingly, we enforce the Board's finding.

### E. May 24 Discharge.

■ At the time of the May 20 written warning, Evans's supervisor called Evans in and informed him of the disciplinary action. His supervisor read him the written warning and asked him to sign it. Evans responded that the warning was based on facts which were not true and that he believed he was being singled out for his union activities. When his supervisor in-

sisted that he sign the warnings, or else the warning would be placed in Evans's file anyway, Evans became angry and used abusive, profane and threatening language toward his supervisor. The supervisor viewed these remarks as insubordination and threats, and recommended that Evans be discharged. On May 24, Evans was discharged for "total disrespect to your supervisor" and "abusive, derogatory and threatening comments." The ALJ found that the Company was justified in discharging Evans because of his abusive and threatening language. He noted that participation in union activities does not insulate an employee from discharge for insubordinate conduct, and rejected the general counsel's argument that the firing of Evans for profane language was discriminatory because other employees had not been discharged for the same conduct.

The Board reversed this finding. Applying the *Wright Line* test, it first concluded that there was "overwhelming" evidence that Evans's discharge was motivated by his union activities and then found that the Company failed to demonstrate that Evans would have been discharged absent that activity. It relied on the fact that other employees who used profanity had not been discharged, and that profanity was common in the workplace. In addition, the Board disagreed with the ALJ that Evans's comment, "I'll have your ass," was a threat. The Board viewed this comment as an expression of a desire to file a grievance or report the supervisor's conduct to a higher authority. Finally, the Board found that even if Evans's comments were insubordinate, it would still find the discharge illegal because the Company provoked the conduct through repeated unlawful conduct.

On appeal, the Company asserts that the Board erred in equating its employees use of profanity during "shoptalk" to Evans's language which it claims was clearly insubordinate. The Board responds that even if Evans's comments were insubordinate, the Company provoked them by unlawfully threatening to discharge him on March 15,

and by unlawfully issuing him an oral and written warning. It notes that the Company concedes that the discharge of Evans violated the Company's usual progressive disciplinary procedues—oral warning, written warning, final written warning and suspension or discharge, and that this precedence was departed from only rarely and then for substantial reasons. The Board finally argues that there is substantial evidence in the record to support its finding that Evans was fired not for his intemperate language but because of his union activities.

Several cases have analyzed employer discipline of employees for protected activity where the employee responded with intemperate language. *See, e.g., NLRB v. Max Factor & Co.,* 640 F.2d at 205; *Hawaiian Hauling Service, Ltd. v. NLRB,* 545 F.2d 674, 676 n. 8 (9th Cir.1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977); *Dreis & Krump Mfg. Co. v. NLRB,* 544 F.2d 320, 328–29 (7th Cir.1976); *Falcon Plastics-Division of B–D Laboratories Inc. v. NLRB,* 397 F.2d 965 (9th Cir.1968); *Boaz Spinning Co. v. NLRB,* 395 F.2d 512 (5th Cir.1968). "The standard is whether [the employee's] improper conduct was so indefensible as to forfeit the Act's protection." *Max Factor & Co.,* 640 F.2d at 205 (citing *NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 12, 82 S.Ct. 1099, 1101–11, 8 L.Ed.2d 298 (1962)). Additionally, "an employer may not rely on employee conduct that it has unlawfully provoked as a basis for disciplining an employee," *NLRB v. Southwestern Bell Telephone Co.,* 694 F.2d 974, 978 (5th Cir.1982) (ordering back pay for employee disciplined for intemperate reaction to unlawful treatment by employer); *NLRB v. Steiner Film, Inc.,* 669 F.2d 845, 851–52 (1st Cir.1982) (ordering reinstatement of employee discharged for intemperate reaction to discipline for protected activities); *NLRB v. Florida Medical Center, Inc.,* 576 F.2d 666, 673 (5th Cir.1978) (same); *NLRB v. Mueller Brass Co.,* 501 F.2d 680, 685–86 (5th Cir.1974) (explaining and applying doctrine of provoked insubor-

dination); *NLRB v. M & B Headware Co.,* 349 F.2d at 174 (same).

Applying these standards, we find substantial evidence in the record as a whole to support the Board's findings that Evans's conduct was not so indefensible as to forfeit the protection of the Act, and that, in any event, his remarks were unreasonably provoked by repeated Company violations of his rights under the Act, and, most importantly, that he would not have been discharged for his language had it not been for his union activities.

Affirmed.