### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### TEXAS INDEPENDENT OIL COMPANY, Inc., Respondent.

### No. 14680.

United States Court of Appeals Ninth Circuit.

April 18, 1956.

Rehearing Denied June 20, 1956.

Theophil C. Kammholz, General Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Edmond Wilson, Samuel M. Singer, James A. Ryan, Attys., N. L. R. B., Washington, D. C., for petitioner.

Langmade & Sullivan, Phoenix, Ariz., for respondent.

Before STEPHENS, FEE, and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

This is a petition by the National Labor Relations Board for enforcement of its order of April 30, 1954, directed against respondent, Texas Independent Oil Company, Inc., ordering it to cease and desist from unfair labor practices, and to reinstate four employees: Van Horn, Cox, Richins, and Almada, with back pay.

Respondent in 1953 started a truck line for the transportation of gasoline from a refinery at El Paso, Texas, to Phoenix, Arizona. M. A. Quisenberry was employed by the company to set up the operation and to employ the men necessary to institute and maintain operations between Phoenix, Arizona; Lordsburg, New Mexico; and El Paso, Texas.

The trial examiner found that in hiring men, Quisenberry was greatly influenced by the fact of whether the particular man was or was not in good standing in the union, or was or was not inclined to promote union activities on the job. Credited testimony was given at the trial that Quisenberry would ask prospective drivers whether or not they were union members, and various other questions that were designed to convey the idea that their chances of continued employment would be seriously affected by their engaging in union activities. Questions of this nature were subsequently asked of the drivers after their employment was commenced. Quisenberry admitted that he told prospective drivers and employees that he wanted the job to remain non-union until "we get rolling". The trial examiner did not

credit this testimony of Quisenberry as to the duration of his antipathy toward unionism, but held that his intention was to keep the job unorganized as long as possible.

The examiner, at the conclusion of the hearings, held that, on the basis of creditable testimony of certain employees including Quisenberry, respondent was guilty of unfair labor practices in violation of Section 8(a) (1) of the National Labor Relations Act,[1] and named specific violations which were supported by substantial evidence. The trial examiner, in addition, held that respondent was in violation of Section 8(a) (3) of the Act because of the discriminatory discharge of employees Cox, Richins, and Van Horn, but held that employee Almada was discharged for good cause.

The National Labor Relations Board, on review of the examiner's decision, agreed in all respects except that it was additionally held that Almada was discriminatorily discharged and not for cause.

Respondent here resists enforcement of the Board's order by arguing:

(1) That the acts which the examiner and the board found to be committed by Quisenberry are not acts of unfair labor practice within the meaning of the National Labor Relations Act.

(2) That even if such acts are held to be unfair labor practices, that they are not imputable to respondent because Quisenberry was a mere employee and the company had no knowledge of such acts nor were they ratified by the company, but that the company upon learning of such acts immediately ordered Quisenberry to desist from repeating them.

(3) That there was shown cause for the discharge of each employee and there was no finding of fact either by the examiner or the board that the cause for discharge was not established, or that it was not sufficient in itself to warrant the discharge in each case.

 It is fundamental that it is the function of this court, when acting on a petition for enforcement of a National Labor Relations Board order, to grant such order if the findings of the board with respect to questions of fact are supported by substantial evidence on the record considered as a whole, and the appropriate law has been applied to the facts.[2]

 As to point (1), we disagree with respondent. The acts of Quisenberry were more than mere interrogatories between two minor employees. They were implied threats, as the board found, that continued employment and employment itself would be dependent on non-instigation of union activities. Quisenberry told employee Almada that "he would have to drop his union card or else". He exacted a promise from Almada that he (Almada) would refrain from union activities before Almada was hired. Quisenberry asked Cox if he was keep-

---

1. National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

Section 7: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)."

Section 8(a): "It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;
* * * * * * *
"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization".

2. Section 10(e) of National Labor Relations Act. See Note 1.

"* * * The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive. * * *"

ing up his union book. He also inquired in great detail as to the union background of almost every employee he hired. There are other specific instances in the record, but those mentioned are sufficient when considered as a whole. The finding of the board on this point is clearly substantiated by the evidence.

■ As to point (2) we would agree with respondent if Quinsenberry here were a minor employee of respondent. But we do not place him in such a category. He was a supervisory employee in direct contact with the vice-president of the company, Horace Steele. We likewise do not feel constrained to say that respondent did not have knowledge of such practices by Quinsenberry. Credited testimony brought out that Quisenberry told Almada that "Old Man Steele" told him to get rid of Almada because he was "union all the way through". Van Horn's testimony, which was credited by the examiner, brought out the fact that Quisenberry told Van Horn that "Old Man Steele" told him to get rid of him because he was instigating the union. In National Labor Relations Board v. Hinde & Dauch Paper Co., 4 Cir., 1948, 171 F.2d 240, 241, it was said:

"If there were evidence that these foremen were speaking with the authority of respondent, or if their expressions of sentiment were so numerous or of such a character as to justify the inference that they were made with respondent's approval in furtherance of an anti-union policy, an order directing respondent to cease and desist from interfering with its employees in the exercise of the rights guaranteed by sec. 7 of the Act (29 U.S.C.A. § 157) would be proper * * *."

From a thorough examination of the record it can be easily ascertained that respondent put Quinsenberry in a position whereby employees would have just cause to believe that he was acting for and on behalf of the company.

■ Finally, as to the actual discharge of the four men, we hold that the findings by the board are supported by substantial evidence in the record considered as a whole.

We do not agree with the proposition which respondent apparently tries to urge upon this court, to the effect that if we find that cause existed for the discharge of any of these men, then we will have to conclude that they were discharged for cause and that "motive" for discharging the men is not controlling. This court has previously answered this idea adversely to respondent, in Wells, Inc., v. National Labor Relations Board, 9 Cir., 1947, 162 F.2d 457, 459–460, where we stated:

"Nor, under the special facts of the case, is motive for the discharge irrelevant, as Wells alternatively asserts. The prohibition of § 8(3), by its plain terms, extends to any discriminatory discharge the purpose and manifest effect of which is to discourage employee membership in a labor organization. *The existence of some justifiable ground for discharge is no defense if it was not the moving cause.* [Cites authority.]" [Emphasis supplied.]

### The Evidence As To The Discharges

Employee Van Horn:

Respondent argues that he (Van Horn) was discharged because of his reluctance to report for work and his expecting the supervisor to get him out of bed each day. There was testimony introduced that this procedure of the supervisor calling on Van Horn personally to come to work was necessary because of the lack of telephone facilities and the fact that no set hour could be determined in advance as to when Van Horn was to drive the next truck. Van Horn *inter alia* testified that when he was fired, Quisenberry admitted that he was getting a "chicken deal" but that he could not do anything about it since "Old Man Steele" told him to get rid of the man

who was instigating the union. The examiner credited Van Horn's testimony.

Employee Cox:

The examiner did not fully credit Cox's testimony, but held that Cox was not discharged because of speeding, as respondent alleged, but was discharged because Cox had lied to Quisenberry about not being a member in good standing of the union and for pro-union sympathies. The examiner pointed out that at the time of firing, Quisenberry asked Cox if he was still keeping his union book and Cox replied that he was. Evidence was brought out at the trial that the speed limit which respondent had set was more honored in the breach than in the observance by the drivers and that respondent had allowed excess speeds in many instances.

Employee Richins:

Respondent alleges that Richins was discharged because of his manhandling of the gears on a truck. The examiner and the board held that he was discriminatorily discharged because Quisenberry feared that he would vote against him in any election. Almada, whose testimony was credited, testified that Quisenberry told him later that he fired Richins because Richins would vote against him in the election. While there was conflicting testimony as to why Richins was fired, and conflicting testimony in regard to the nature and extent of damage to the gears of the truck, and as to who caused it, we find that there was substantial evidence to support the board's finding.

Employee Almada:

Almada was one of the first drivers hired by Quisenberry. He was more or less given added responsibility by Quisenberry from the inception of the truck line. Quisenberry knew that he was a strong union man and made him promise not to instigate union activities before he hired him. The testimony of Almada was fully credited by the examiner, but he held that Almada was discharged because he failed to "bump" the tires (check the pressure) at customary or specified distance intervals, and because

of such failure caused a tire to burn. The board, however, held that the matter of bumping the tires was a mere pretext and that Almada was discharged because he exercised his statutory right to join and assist the union. There was substantial testimony in support of either the examiner's or the board's conclusion, and since the different conclusions did not arise from credibility of witnesses, the board was free to draw its own conclusion. We find no error here.

The petition for enforcement is granted.