James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

GOODYEAR TIRE AND RUBBER COMPANY, Defendant.

No. 1451.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Feb. 4, 1959.

Harry Campbell, Jr., Asst. Regional Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Hardin, Barton, Hardin & Garner, Ft. Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

On September 12, 1958, the plaintiff, James P. Mitchell, Secretary of Labor, U. S. Department of Labor, filed his complaint against defendant, Goodyear Tire and Rubber Company, to enjoin the defendant from violating the provisions of Section 15(a)(3) of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a)(3).

Plaintiff alleged that the defendant was engaged in interstate commerce and in the production of goods for interstate commerce; that on or before June 23, 1958, M. C. Cole and other employees of the defendant filed a complaint against defendant with the Secretary of Labor, U. S. Department of Labor, and his duly authorized representative, in which they alleged and claimed that defendant had failed and refused to pay them overtime compensation under Section 7 of the Fair Labor Standards Act, 29 U.S.C.A. § 207; that defendant was then, and at all times material herein, employing the said employees at its place of business in Fort Smith, Arkansas, in procuring, storing, and wholesale distribution of tires and tubes, household appliances and other goods, substantially all of which had been ordered and received from suppliers outside the State of Arkansas, and were being sold, shipped and delivered to points outside the State and were moving in interstate commerce.

That during the period subsequent to on or about June 23, 1958, defendant had violated and was then violating the provisions of Sec. 15(a)(3) of the Act in that it had repeatedly discriminated against and discharged the said M. C. Cole and other employees because they had filed complaints related to the Act, or because they were about to testify in an official investigation or proceeding instituted under the Act.

That the defendant has since the effective date of the Act repeatedly violated the provisions of the Act, and that a judgment enjoining and restraining the violations herein alleged is specifically authorized by Section 17 of the Act, 29 U.S.C.A. § 217.

The prayer of the complaint is (1) that the defendant, its servants, agents, and employees and other persons acting or claiming to act in its behalf and interest be permanently enjoined and restrained from violating the provisions of Sec. 15 (a)(3) of the Act; (2) that defendant be ordered to immediately reinstate and reemploy the said M. C. Cole and other employees discharged in violation of Sec. 15(a)(3) of the Act; and (3) that defendant be ordered to pay the said M. C. Cole and all other employees unlawfully discharged for the loss of wages sustained by reason of their discharge in violation of Sec. 15(a)(3).

On September 30, 1958, the defendant filed its answer in which it specifically denied the allegations of the complaint.

The case proceeded to trial to the court without a jury on January 28, 1959, and at the conclusion of the testimony and arguments of counsel for the respective parties, the case was submitted and taken under consideration, and now, having considered the ore tenus testimony of the witnesses with the exhibits to said testimony, the oral arguments of counsel and briefs submitted in support of their respective contentions, the court makes and files herein its formal Findings of Fact and Conclusions of Law.

### Findings of Fact

1.

The plaintiff is the Secretary of Labor, U. S. Department of Labor. The defendant is a corporation organized and existing by virtue of the laws of the State of Ohio and is authorized to engage in business in the State of Arkansas, where it maintains an office and wholesale establishment and warehouse in the City of Fort Smith, Arkansas.

2.

At the beginning of the trial the parties through their attorneys filed the following stipulation:

"That defendant's establishment located at 122 North 11th Street, Fort Smith, Arkansas, consisting of an office, recapping shop and a ware-

house, is engaged in procuring, storing and wholesale distribution of new and used automobiles and truck tires and tubes, household appliances and other goods.

"That at all times material to this action and subsequent to December 1, 1957, defendant and employees of its said establishment have regularly each workweek procured, ordered, received and stored new and used automobile and truck tires and tubes, household appliances and other goods in substantial quantities from sources and suppliers located outside the State of Arkansas; and have regularly each workweek during said period sold, shipped and delivered substantial quantities of such goods to customers located in the States of Oklahoma and Mississippi."

### 3.

M. C. Cole was first employed in 1951 by defendant as a "tire changer" in and about its place of business in Fort Smith, Arkansas, and continued as such employee until June 25, 1958, with the exception of two years that were spent in the United States Navy.

On June 23, 1958, M. C. Cole and another employee, Leonard L. Embry directed a letter to E. O. Hicks of the Wage and Hour Division, Department of Labor, Little Rock, Arkansas, in which they stated:

"We are writing you this letter for your help, and for you to look into this matter immediately sir. We work for the Goodyear Tire and Rubber Company, Fort Smith, Arkansas. Our names are Leonard L. Embry and M. C. Cole. The store manager asked us to work overtime. Promised to pay us but won't. So we are sending you a copy of last week's time we did not get paid for. We work nearly every week overtime but don't get paid. This have been going for sometime. The month of December 1957 we had 53 hours each.

"We be looking for an answer real soon.

"Yours truly,
"/s/ M. C. Cole
"Leonard L. Embry

"P. S. These time sheets have been approved by the Service Manager, McCain."

In the letter they enclosed a record of hours worked for the week ending June 21, 1958, and according to the record each of the employees worked a total of 60 hours that week.

The letter containing the enclosures was answered by William J. Rogers, Regional Director, U. S. Department of Labor, Room 222, 1114 Commerce Street, Dallas, Texas, on July 9, 1958, and the employees were advised that the Wage and Hour Division was not scheduling investigations of the type of industry mentioned by them due to some "unsettled questions relative to the application of the retail exemption provided under Sections 13(a) (2) and 13(a) (4) of the Act [29 U.S.C.A. § 213(a) (2, 4)." Mr. Rogers further advised the employees that the fact that the Wage and Hour Division did not plan to conduct an investigation did not affect the independent statutory rights provided employees for the recovery of unpaid wages as outlined in a handy reference guide that was sent to Cole and Embry. The record of the hours worked, above referred to, was returned to Cole.

The employee M. C. Cole testified that he earned 51 or 53 hours overtime during the month of December 1957, for which he was not paid, but Exhibits 2, 3, 4, and 5 to his testimony disclose that he made claim for only 48 hours per week for the weeks ending December 1, December 8, December 15, and December 29, while for the week ending December 22 he claimed to have worked 57 hours, and he was paid regularly for the overtime disclosed in the record of hours worked during December.

The employee further testified that during the month of June he accumulated something like 20 or 23 hours of over-

time prior to his discharge on June 25. The record of the hours worked in June, Exhibits 6, 7, 8 and 9, discloses that during the week ending June 7, 1958, he worked 52 hours; during the week ending June 15, 55 hours; during the week ending June 22, 48 hours; and 27 hours during the days of June 23, 24 and 25. He was paid for all hours and overtime worked during that week on the records that were turned in by him.

The records of hours worked which were sent by Cole and Embry to the Wage and Hour Division disclosed that each of them worked 60 hours during the week ending June *21*, 1958, and were signed by the employees and approved by someone representing the defendant, apparently Mr. McCain, the then Service Manager. In fact, Mr. McCain testified that Cole did work some overtime during June, but the record of the time worked and upon which he was paid discloses that he was paid for all overtime that he actually worked as shown on Exhibits 6, 7, 8 and 9, above referred to.

### 4.

M. C. Cole's duties were to change tires, answer service calls, and receive and store incoming goods, pack and ship outgoing goods. In addition to his regular duties around the place of business he was required to regularly inspect and service on each Wednesday a fleet of 43 trucks and automobiles used by the Gateway Baking Company of Fort Smith. That company was one of the most valued customers of defendant, and complaints were made by the Gateway Baking Company to the defendant of the manner in which Cole inspected and serviced the vehicles. The complaints became so serious that about April 1, 1958, after the Gateway Baking Company had contacted Denton Powers Tire Company and had obtained an inspection of the vehicles by a representative of the Denton Powers Tire Company, the defendant assigned another employee to the inspection and service of the fleet of the Baking Company, and in order to satisfy its customer required one of its salesmen to accompany said employee on each inspection

trip. However, after the other employee had been assigned, the employee Cole on certain weeks made the inspection and serviced the vehicles, but at all times, whether Cole or another employee was inspecting and servicing the fleet, the salesman was always present. Yet, notwithstanding the presence of the salesman, Cole's work in that capacity continued to be unsatisfactory to the Gateway Baking Company.

The complaint of the Baking Company was a serious one as evidenced by defendant's Exhibit 10.

### 5.

Some two or three weeks prior to June 25, the date Cole was discharged, the defendant, through its supervisory personnel, began trying to find someone to replace Cole. The Office Manager and Service Manager of defendant contacted two or three persons in an effort to find a suitable replacement. The Office Manager located a Mr. Ulmer who, at that time, was working for O. D. Shackleford in the operation of his service station and grocery store on U. S. Highway 64, approximately 6 or 7 miles west of Fort Smith in Oklahoma. Mr. Ulmer was unable to accept immediate employment, but on the day Cole was discharged the Manager drove into Oklahoma and contacted Ulmer again, and he began his work the next day, June 26, in lieu of Cole who had been discharged the day before, June 25.

### 6.

Cole was an unsatisfactory employee in many respects. The court does not deem it necessary to set out in detail the many derelictions on the part of Cole, but the testimony fully reveals his actions during working hours. Some of his creditors called the defendant at intervals in an effort to collect debts owed them by Cole and at times threatened to garnishee defendant if the debts were not paid. During his employment Cole became indebted to the defendant for various purchases, and in an effort to help him some of the employees of defendant, including the Office Manager, loaned him money. Defendant was required to answer the vari-

ous complaints of Cole's creditors and other people who were anxious to locate him and who had claims of various kinds against him.

The testimony discloses that the Office Manager and, as for that matter, all of the administrative employees of the defendant did all they could to help Cole and to retain him as an employee, but an accumulation of various derelictions built up to such an extent that the defendant decided it was necessary to discharge him. On the 25th of June, 1958, he was discharged by the Office Manager. At that time the Manager and Cole reviewed the entire situation, and in the course of that conversation, the Office Manager asked about writing the letter on June 23, which has been set forth in Finding of Fact No. 3. Cole admitted writing the letter, but the testimony does not disclose that his discharge in any way related to the letter. He was scheduled for discharge two to three weeks before the letter was written. In the same conversation the Office Manager requested Cole to pay the amount due the defendant as represented by the two accounts referred to in the testimony as the 30-day account (Exhibit 11) and the budget account (Exhibit 12), and advised him that unless the budget account was paid, he would have no alternative except to repossess the property for which the debt was incurred. Cole refused to surrender the property, and stated that if the defendant desired to repossess the property, it would be necessary to institute a lawsuit for that purpose.

From all of the testimony the court is convinced that Cole's discharge resulted from his own derelictions, and that he was not in anywise discriminated against nor did his discharge occur because of the letter.

7.

The employee, Leonard L. Embry, was asked if he had written a letter, and Embry denied writing the letter. As a matter of fact, he signed the letter that was written by Cole, but Embry was not discharged and is still in the employ of the defendant. His work was satisfac-

tory and he was not questioned any further about the letter. The record is devoid of any testimony tending to show any discrimination against Embry, Cole, or any other employee.

8.

The normal workweek of the employees of defendant was 48 hours, and Cole and other similar employees were paid at the rate of $1.00 per hour for the first 40 hours and $1.50 per hour for 8 hours, or $52.00 per week for a normal week's work. Of course, any other overtime was likewise paid for at the rate of $1.50 per hour.

Cole was unable to find other employment until July 28, 1958, when he obtained employment at the Mercury Motors in Fort Smith, Arkansas, at a weekly salary of $30.00 per week. Thus, because of his discharge he lost $52.00 per week from June 26 to July 28, 1958, and has lost $22.00 per week from July 28 to date by reason of his discharge.

Discussion

Title 29 U.S.C.A., § 215(a)(3), provides:

"It shall be unlawful for any person to * * * discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

The plaintiff in his brief, beginning at the bottom of page 9, states:

"Plaintiff submits that under the applicable decisions it is well established that the court in this case, upon a showing of the facts alleged in the complaint, in the exercise of its equity powers, is authorized to enjoin defendant from future violations of Section 15(a)(3) of the Act, to require defendant to reinstate the employees unlawfully discharged and to allow recovery of wages lost by

reason of the discharge. Any relief granted short of that sought would fail to grant full redress to the plaintiff and to the employees wronged by the illegal conduct complained of."

In his able brief plaintiff has referred to various decisions, including Walling v. Miller, 8 Cir., 1943, 138 F.2d 629, and Mitchell v. Robert De Mario Jewelry, Inc., 5 Cir., 1958, 260 F.2d 929. Also, plaintiff has called the attention of the court to various decisions based upon Title 29 U.S.C.A., § 158(a)(4).

That statute provides:

"It shall be an unfair labor practice for an employer * * * to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter."

The cases arising under Sec. 158(a) (4), supra, cited by plaintiff are: National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893; National Labor Relations Board v. Texas Independent Oil Co., 9 Cir., 1956, 232 F.2d 447; National Labor Relations Board v. Jamestown Sterling Corp., 2 Cir., 1954, 211 F.2d 725; National Labor Relations Board v. Glenn L. Martin-Nebraska Corp., 8 Cir., 1944, 141 F.2d 371; Carter Carburetor Corp. v. National Labor Relations Board, 8 Cir., 1942, 131 F.2d 927. These cases make it clear that the motive for a discharge is the actual governing fact even though there might be other reasons for the discharge.

The court does not think it is necessary to analyze or comment upon the National Labor Relations Board decisions or those in which Title 29 U.S.C.A. § 215(a)(3), Sec. 15(a)(3), Fair Labor Standards Act, have been construed for the reason that the court has found as a matter of fact that the defendant did not discriminate against Cole or any other employee, and that the discharge of Cole was not because he had filed a complaint or written a letter to the Wage and Hour Division of the Department of Labor. In other words, the discharge of the employee Cole was not unlawful, and was not motivated by the letter of Cole.

The allegations of the complaint were not sustained in any particular. The record is completely devoid of any testimony which shows or tends to show that defendant should be enjoined for any act done or in contemplation.

### Conclusions of Law

1.

The court has jurisdiction of the parties and the subject matter.

2.

The plaintiff is not entitled to an injunction enjoining the defendant from future violations of Sec. 15(a) (3) of the Act, or to require the defendant to reinstate M. C. Cole, or to award a recovery of wages lost by reason of the discharge, and the complaint should be dismissed.

An order in accordance with the above is being entered today.