15 F.3d 1087
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 MASTER WINDOW CLEANING, INC., dba Bottom Line Enterprises, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
MASTER WINDOW CLEANING, INC., dba Bottom Line Enterprises, Respondent
Service Employees International Union, Local 1877,
Respondent-Intervenor.
 Nos. 92-70457, 92-70528.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 15, 1993.*
Decided Jan. 10, 1994.
 
 Before: LAY,** THOMPSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Master Window Cleaning, Inc. ("the Company") petitions for review of the National Labor Relations Board's order finding that the Company violated section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(5), (1), by declaring an impasse in collective bargaining negotiations, unilaterally implementing its final proposal, and discontinuing certain benefit contributions prior to impasse. The Board cross-applies for enforcement of its order. We have jurisdiction pursuant to section 10(e) and (f) of the Act, 29 U.S.C. Sec. 160(e), (f). We deny the Company's petition and grant enforcement of the Board's order.
 
 
 3
 * Decisions of the Board will be upheld on appeal if its findings of fact are supported by substantial evidence and if it has correctly applied the law. NLRB v. Howard Elec. Co., 873 F.2d 1287, 1290 (9th Cir.1989). The reviewing court may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). Credibility determinations should not be disturbed unless a clear preponderance of the evidence convinces the court that they are incorrect. NLRB v. International Longshoremen's & Warehousemen's Union & Local 27, 514 F.2d 481, 483 (9th Cir.1975).
 
 II
 
 4
 The Company first argues that the Board erred in finding that the parties had not reached an impasse when the Company broke off negotiations on August 1, 1988. Whether an impasse existed is an inquiry particularly amenable to the expertise of the Board as a trier of fact. Richmond Recording Corp. v. NLRB, 836 F.2d 289, 293 (7th Cir.1987); see also LAWI/CSA Consolidators v. Teamsters Local 63, 849 F.2d 1236, 1239-40 (9th Cir.1988) (whether a bargaining impasse has been reached is essentially a factual question that is reviewed for clear error).
 
 
 5
 The Board has defined an impasse as "that point of time in negotiations when the parties are warranted in assuming that further bargaining would be futile." Patrick & Co., 248 N.L.R.B. 390, 393 (1980), enforced mem., 644 F.2d 889 (9th Cir.1981). The Board considers the following factors: (1) the bargaining history; (2) the parties' good faith in the negotiations; (3) the length of the negotiations; (4) the importance of the issue or issues as to which there was disagreement; and (5) the contemporaneous understanding of the parties as to the state of the negotiations. Taft Broadcasting Co., 163 N.L.R.B. 475, 478 (1967), enforced sub nom. American Federation of Television & Radio Artists v. NLRB, 395 F.2d 622 (D.C.Cir.1968).
 
 
 6
 Applying the Taft factors, the ALJ concluded that no impasse existed on or before August 1. He found that both parties had bargained in good faith through the July 13 meeting, and noted that after five meetings they had made considerable progress on the issue of wages. As for the other major issues, the ALJ found that the Company's health and pension plan proposals "provided ample room for modification, refinement and agreement as to details." Although the Company "had steadfastly maintained a 'tough' stance" on subcontracting, "this [did] not mean that the subject appeared so intractable as to make the possibility of a compromise seem futile." Finally, the ALJ found that Union Representative Robert Russell's intention to "counterpropose boldly" after lunch demonstrated the parties' understanding that negotiations were not yet deadlocked. In the Board's words, "the parties were, in fact, poised for movement when negotiations broke for lunch on August 1."
 
 
 7
 The Board's finding that no impasse existed is supported by substantial evidence in the record. Most important is the admission by the Company's negotiator Sanford Rudnick in his August 1 letter that they "were about to make some progress" when the negotiations recessed for lunch. In addition, the fact that the parties agreed to meet again after the July 13 meeting suggests that neither believed further bargaining sessions would be futile. See Colfor, Inc., 282 N.L.R.B. 1173, 1174 (1987) (finding no impasse where parties agreed to meet for further negotiations), enforced, 838 F.2d 164 (6th Cir.1988).
 
 
 8
 The Company argues that negotiations had reached an impasse before the August 1 meeting. We disagree. Although Rudnick stated in the July 22 letter that the Company would implement its final proposal if an agreement was not reached on August 1, he never indicated that negotiations were deadlocked. Indeed, the fact that the Company made a series of "final" proposals tends to diminish its sincerity that any of them were, in fact, final. The Board and the courts recognize such labeling as a common bargaining tactic. See, e.g., Teamsters Local Union No. 175 v. NLRB, 788 F.2d 27, 31 (D.C.Cir.1986); Louisville Plate Glass Co., 243 N.L.R.B. 1175, 1181 (1979), enforced, 657 F.2d 106 (6th Cir.1981). It was only when the Union cancelled the afternoon session that Rudnick became irritated and declared an impasse. Had Russell been able to attend that session, the parties' negotiations would have continued. From these circumstances the Board could reasonably conclude that Rudnick's declaration was premature.
 
 
 9
 To support its arguments, the Company relies heavily on the discredited testimony of its president, Richard Scott. Given the deference we must give to the ALJ's credibility determinations, we will not overturn the finding of no impasse.
 
 III
 
 10
 The Company next claims that by failing to request further bargaining or object to the Company's declaration of an impasse for several months, the Union waived its right to complain that the discontinuation of the trust fund contributions was unlawful. We reject this contention. By unilaterally declaring an impasse and threatening to implement its final proposal as of midnight, the Company violated the Act. This violation relieved the Union of its duty to return to the bargaining table or object to the unlawful declaration of an impasse.
 
 IV
 
 11
 Finally, the Company argues that the Union's failure to bargain in good faith precludes a finding that the Company acted in bad faith. The Union's cancellation of a single bargaining session for a legitimate reason does not constitute bad-faith bargaining. SCA Servs. of Georgia, Inc., 275 N.L.R.B. 830, 834 (1985). The Company relies on "Russell's failure to return to the August 1 negotiations, failure to make or even formulate a counter-proposal, and failure to contact the Company to resume negotiations" as evidence of the Union's bad faith. As discussed above, however, the Union had no obligation to attempt further negotiations. Its failure to do so cannot be considered bad-faith bargaining.
 
 
 12
 REVIEW DENIED and ENFORCEMENT OF ORDER GRANTED.
 
 RYMER, Circuit Judge, dissenting:
 
 13
 I respectfully dissent. The conclusion that no impasse had been reached turns on the ALJ's finding that the Union intended to "counterpropose boldly" after lunch on August 1. The basis for this finding was Russell's testimony that he was prepared to come up with a "serious" counterproposal because of a "significant change" in the Company's position on wages. Yet the record shows no inclination by the Company to alter its position. Indeed, the ALJ specifically credited Scott's testimony that the proposal presented by the Company at the August 1 meeting contained an error in the proposed wage progression for new hires. There was, therefore, no "significant change," and the ALJ's finding of progress on August 1 is without support.
 
 
 14
 Because I believe the finding of no impasse was based on an erroneous assumption about a nonexistent change the Company's wage proposal, I would reverse and remand for further proceedings.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Donald P. Lay, Senior United States Circuit Judge, Eighth Circuit Court of Appeals, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3