**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.

No. 95-1323

AMFM OF SUMMERS COUNTY,
INCORPORATED,
Respondent.

AMFM OF SUMMERS COUNTY,
INCORPORATED,
Petitioner,

No. 95-1812

v.

NATIONAL LABOR RELATIONS BOARD,
Respondent.

On Application for Enforcement and Cross-petition for Review of
an Order of the National Labor Relations Board.
(11-CA-15659)

Argued: March 4, 1996

Decided: June 20, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and YOUNG,
Senior United States District Judge for the District of Maryland,
sitting by designation.

_____

Enforcement granted by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** George Jerald Oliver, SMITH, HELMS, MULLISS & MOORE, L.L.P., Raleigh, North Carolina, for AMFM. Meredith L. Jason, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for NLRB. **ON BRIEF:** Frederick L. Feinstein, General Counsel, Linda Sher, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Linda Dreeben, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for NLRB.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The National Labor Relations Board ("NLRB") filed an application with this Court for enforcement of its order enjoining AMFM of Summers County, Inc. ("AMFM") from certain unfair labor practices and directing a second union election. AMFM filed a cross-petition for review. We find the order supported by substantial evidence and grant enforcement.

I.

AMFM operates nursing facilities at nine locations in West Virginia, including a facility at Hinton, West Virginia in Summers County. In February 1993, employees James Gill and Kay Fleshman, both Licensed Practical Nurses ("nurses") at the Summers facility, contacted the United Mine Workers to discuss union representation. In April 1993 they contacted the United Steelworkers of America, AFL-CIO ("the Union"), which eventually agreed to represent the employees of AMFM in their organizational effort at the Summers facility. On May 27, 1993, the Union sent a letter to AMFM identify-

2

ing 17 employees, including Gill and Fleshman, who were actively engaged in a union campaign at the facility. On July 6 the Union filed a petition seeking to represent employees at the Hinton facility. On September 8, 1993, a secret ballot election at the Hinton facility resulted in a vote of 39 for, and 48 against, Union representation.

The Union filed unfair labor practice charges on September 27, 1993, alleging that AMFM promoted nurses from the eligible voting pool, disciplined Union activists, and intimidated employees in an attempt to influence the outcome of the Union election. An Administrative Law Judge ("ALJ") issued an opinion in the Union's favor and the NLRB adopted the ALJ's opinion and now seeks enforcement of the order. AMFM subsequently filed a petition for review.

II.

Enforcement of NLRB orders is denied only when the reviewing court is unable to "conscientiously find that evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." Universal Camera Corp. v. NLRB , 340 U.S. 474, 488 (1951). For example, if the NLRB ignored material evidence or disregarded or eliminated evidence by simply discrediting an employer's witnesses, enforcement may be denied. NLRB v. Huntington Hosp., Inc., 550 F.2d 921, 924 (4th Cir. 1977) (citing NLRB v. United Brass Works, Inc., 287 F.2d 689, 691 (4th Cir. 1961)). But the reviewing court is not to substitute its own choice for that of the NLRB, even when the court might have drawn a different conclusion had it decided the question de novo. Universal Camera, supra, at 488. We are particularly reluctant to re-examine credibility determinations made by the NLRB or an ALJ. See Benson Veneer Co. v. NLRB, 398 F.2d 998, 1000 (4th Cir. 1968). With these basic principles in mind we turn to the specific findings of the NLRB.

A. PROMOTION OF THE LICENSED PRACTICAL NURSES.

AMFM promoted the nurses to supervisors on July 19 and granted them a $.25 raise. Two days later, the nurses were informed by an attorney for AMFM that they could not participate in Union activities.

3

The NLRB found that AMFM's conduct violated 29 U.S.C. § 158(a)(1), which provides that it is an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights [to organize a union]." An employer violates this section when its conduct may reasonably tend to coerce or intimidate employees. Standard-Coosa-Thatcher Carpet Yarn Division v. NLRB , 691 F.2d 1133, 1137 (4th Cir. 1982), cert. denied, 460 U.S. 1083 (1983) (citing NLRB v. P.B. & S. Chemical Co., 567 F.2d 1263, 1267 (4th Cir. 1977)). Promotion of employees to supervisory positions may be intended to curtail a union organizational campaign. See Hospitality Motor Inn, Inc., 667 F.2d 562 (6th Cir. 1982), cert. denied 459 U.S. 969 (1982). We have held that a company policy that had been planned for a long time can constitute an unfair labor practice if its implementation is accelerated to hinder union activities. J.P. Stevens & Co. v. NLRB, 668 F.2d 767, 771 (4th Cir. 1982), vacated on other grounds 458 U.S. 1118 (1982); NLRB v. Preston Feed Corp., 309 F.2d 346 (4th Cir. 1962). It is also an unfair labor practice to improperly inform non-supervisory employees they cannot engage in union activities and could be discharged because they are supervisors. Shelby Memorial Home Assoc., 1 F.3d 550, 560-61 (7th Cir. 1993).

Both parties recognize that the nurses were promoted under a plan that had been conceived long before the Union had been contacted. As early as March 1991, John Elliot, the president of AMFM, had concluded that management staff at all nine facilities should include nurses. In the early fall of 1992, a committee was formed to address this issue and it met from December 30, 1992 through the spring of 1993. On June 11, 1993, the committee drafted a proposed implementation plan, on June 28 Elliot approved the plan, and on July 19 he implemented it at all nine facilities by a letter to all nurses. On July 20 Shrewsbury met with the nurses at the Summers facility to inform them of the change, which included a $.25 raise. On July 21 AMFM informed the nurses at the Summers facility they could not engage in certain activities connected with unionization because they were supervisors.

The NLRB interpreted this chain of events as showing that AMFM tried to promote the most active Union organizers, including Gill and Fleshman, out of the eligible voting pool and silence them in order to stifle the organizational effort. The NLRB found that the promotion

was hastily implemented because of the unionization activities, noting that the July 19 promotion occurred two weeks after the Union petition. In addition, the NLRB gave import to a May 21 memo from Pame Lawson, the director of human resources, which told the committee that "OUR TIME IS GETTING SHORT!!!!" Furthermore, Gill and Debbie Ashley, the former Director of Nurses, testified that the nurses were not given new job descriptions, duties, or training until November 1993.

In response, AMFM claims that the intended January 1993 implementation was delayed to July 1993 for various reasons, including state approval of continuing education for nurses. AMFM contends the promotion of nurses at all nine facilities is contrary to any intention to weaken the Union. AMFM also notes that after the NLRB found that the nurses were not supervisors on August 17, it posted a notice to employees indicating that it would not appeal the ruling and management met with the nurses three weeks before the election to explain they were eligible to vote.

NLRB's holding that AMFM interfered with the nurses' right to organize is supported by substantial evidence. Although the record reflects that the promotion of nurses had been a goal of the company for a long time, the timing is evidence that its purpose was, in part, to curtail Union activities. The Union petition on July 6 may not have triggered the proposal, as NLRB seems to suggest, because Elliot had approved the plan before the Union petition was filed. Nevertheless, AMFM had known of Union activity and the employees involved since at least May 27, and the rapid implementation of the promotion from its formal proposal on June 11 to the counseling on July 21 stands in contrast to the lack of any significant follow-up until after the Union election. No detailed plan to incorporate the nurses into the management structure was announced with the promotion, and AMFM ignored this supposedly important management change until November. AMFM's explanation that the delay was due to late state approval of continuing education for nurses is disingenuous, for AMFM did not offer any credible explanation why continuing education was crucial to integrating nurses into management. That the promotion was implemented at all nine AMFM facilities does not show that the threat of unionization played no part in the decision, as none of the other facilities had been unionized and the NLRB could have

5

reasonably decided that the promotion was intended to curtail any unionization of AMFM. Nor is the apparently good faith compliance with the August 17 ruling relevant to AMFM's motivation in promoting the nurses in the first place.

B. DISCIPLINARY ACTION TOWARDS GILL AND FLESHMAN.

Rick Shrewsbury, administrator of the Summers facility, testified that supervisors complained on July 27 that Gill was soliciting for the Union during working hours. Later that day Shrewsbury received written complaints from employees about the solicitations, including one from nursing assistant Brenda Allen that claimed a July 25 solicitation from Gill interfered with her work. Based on Shrewsbury's instructions, the Director of Nursing, Debbie Ashley, issued an oral disciplinary warning to Gill on July 31 and later issued a written warning to Gill and reminded him of AMFM's policy against solicitation. Also at Shrewsbury's direction, on August 6 Ashley issued an oral warning to Kay Fleshman about her negative attitude, arguments with co-workers, derogatory comments about residents under her care, and refusal to wear her name tag.

NLRB found that nurses Gill and Fleshman were disciplined because of their general activism on behalf of the Union and in retaliation for testifying at an NLRB hearing on July 28, and that these warnings violated 29 U.S.C. § 158(a)(1), which prohibits conduct tending to intimidate employees, and 29 U.S.C. § 158(a)(3), which prohibits discrimination "in regard to . . . any term or condition of employment to discourage membership in any labor organization . . . ." NLRB also found that the warnings constituted a separate violation of 29 U.S.C. § 158(a)(4), which provides that it is an unfair labor practice "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony . . . ." An employer violates these sections when anti-union considerations are "a motivating factor" for the action. NLRB v. Transportation Management Corp., 462 U.S. 393, 401-403 (1983), overruled on other grounds, 114 S.Ct. 2251 (1994); NLRB v. Nueva Engineering, Inc., 761 F.2d 961, 967 (4th Cir. 1985). Both direct and circumstantial evidence may be relied upon to infer improper motive. See NLRB v. Low Kit Mining Co., 3 F.3d 720, 728 (4th Cir. 1993); American Thread Co. v. NLRB, 631 F.2d 316, 321 (4th Cir. 1980). Of course, an

6

employer must have known that the affected employees are engaged in protected activities to have the requisite motive. See NLRB v. Daniel Construction Co., 731 F.2d 191, 197 (4th Cir. 1984).

NLRB relied on Ashley's testimony that Elliot told her to find some basis to reprimand nurses and Shrewsbury told her to "clean house." Ashley also testified she steered Allen towards an incorrect portrayal of the July 25 conversation with Gill, and that she had never before disciplined any employee for violation of the no-solicitation rule. Importantly, the ALJ had found Ashley a credible witness based on her demeanor and collaborating evidence. The NLRB also relied on the timing of the warning to Gill, which happened three days after he testified at the NLRB hearing, and his key role in union activities at the facility. Regarding the reprimand of Fleshman, NLRB relied on her union activism, timing of the warning shortly after she had testified, and Ashley's testimony that other employees were not disciplined for the same behavior to infer that AMFM had an improper motivation to discipline her.

AMFM claims that Gill was only counselled to avoid soliciting during working time, and that he was free to solicit at other times, as he continued to do with AMFM's knowledge. AMFM also attacks Ashley's credibility by claiming she was biased against the company because she was terminated for poor performance and contends that Shrewsbury's desire to "clean house" simply referred to Ashley's failure to discipline employees for unexcused absences and that her testimony was directly refuted by other managers.

We hold that the NLRB's finding that Gill and Fleshman were disciplined for improper reasons is supported by substantial evidence. AMFM certainly knew that they were actively engaged in the unionization effort. The application of the non-solicitation rule to Gill, one of the leading Union organizers, soon after he testified at the NLRB hearing, is circumstantial evidence that AMFM disciplined him because of his Union activities. The direct evidence of motive is from Ashley's testimony, and we are reluctant to overrule the ALJ's first-hand determination of her credibility. Had AMFM simply wanted employees to follow the non-solicitation rule, as it claims, it could have held a general meeting or posted a general announcement instead of meeting only with Gill. And although the decision to repri-

7

mand Gill was allegedly made before the hearing, it could have been made in retaliation for his future testimony at the NLRB hearing, for AMFM knew he was going to testify. NLRB was also justified in finding AMFM's treatment of Fleshman improper, based on the proximity of the discipline to the hearing date, her key role in Union activities, and Ashley's testimony.

## C. SUSPENSION OF EVALUATIONS AND RAISES.

AMFM evaluates employees annually on the date they were hired and grants raises based on the evaluations. Throughout the union campaign, AMFM completed evaluations and granted raises. After the Union filed objections on September 13, Shrewsbury delayed completion of annual employee evaluations and merit pay adjustments for nine employees at the Summers facility. The benefits were eventually granted retroactive to the date for which they were originally scheduled.

The NLRB found that the suspension violated 29 U.S.C. § 158(a)(1) and 29 U.S.C. § 158(a)(3), which provide that it is an unfair labor practice to discriminate in regard to any tenure of employment to discourage union membership or retaliate against union activities. Delays in benefits during a campaign are unfair labor practices even when the benefits are eventually given, unless there is a legitimate business purpose that is not pretextual. Southern Maryland Hospital Center v. NLRB, 801 F.2d 666, 668-69 (4th Cir. 1986).

NLRB concluded that AMFM attempted to discourage union membership by blaming the suspension on the Union's objection to the election. This conclusion was based on Ashley's testimony that Shrewsbury said he imposed the freeze because of the allegations filed by the Union and the tension caused by the election. In response, AMFM claims Shrewsbury delayed the evaluations to satisfy himself that evaluations done in the aftermath of the election were fair and accurate. Further, it claims that evaluations had been delayed before at the Summers facility for various reasons, including several occasions in 1993 prior to the election.

The NLRB finding is supported by substantial evidence. Although no evaluations were suspended during the Union campaign, evalua-

tions were frozen shortly after the close and contested union election. Employees were adversely affected for an indefinite period and were told that the action was taken because of Union activities. The NLRB could have found that suspension was intended to dampen enthusiasm for another election.

D. THREAT OF CLOSURE.

On August 23 or 24, Dr. Jack Woodrum, who was accompanied by Clinical Care Coordinator Barbara Meadows and Social Services Director Ray Nutter, asked Gill why he was trying to unionize the Summers facility and opined that Elliot would close the Summers facility if it became unionized.

The NLRB found this statement violated 29 U.S.C.§ 158(a)(1) because it was an attempt to intimidate employees and influence the outcome of the union election. An employer is responsible for comments made by others if employees had "just cause to believe [the person making the comment] was acting for or on behalf of the company." Proctor & Gamble Manufacturing Co. v. NLRB, 658 F.2d 968, 984 n. 18 (4th Cir. 1981), cert. denied, 459 U.S. 879 (1981) (quoting NLRB v. Texas Independent Oil Co., 232 F.2d 447, 450 (9th Cir. 1956)). In this context, attribution is broader than the strict rules of agency law. Id.

The NLRB did not find Woodrum was AMFM's agent, but rather that Woodrum had special status as the medical director of the Summers facility since its inception, and in this capacity had reviewed AMFM's policies and procedures, signed the front page of AMFM's policy and procedure manuals, trained facility employees, and been included among the managers' names on the facility. Under these circumstances, the NLRB found that Woodrum's comments were attributable to AMFM. The NLRB also found that Woodrum's comments were ratified by the silence of Meadows and Nutter. AMFM claims that it is not responsible for the conduct of Woodrum, who is an independent contractor without managerial authority, does not participate in manager's meetings, and has no financial stake in AMFM. AMFM also emphasizes that Gill testified he knew Woodrum was not part of AMFM's chain of command.

9

We affirm the decision of the NLRB holding Woodrum's comments were an attempt to intimidate a supporter of the Union. There is substantial evidence that Gill could have reasonably thought Woodrum knew AMFM's view towards unionization and accurately represented that view with the acquiescence of AMFM managers.

III.

For the foregoing reasons, the NLRB findings are supported by substantial evidence. The NLRB petition to enforce is

GRANTED.